## Pritchett *v.* Board of Commissioners of the County of Knox et al.

[No. 6,614. Filed June 2, 1908.]

1. Nuisance.—*Jails.—Governmental Purposes.*—Jails, established for governmental purposes by counties, under imperative statutes, and in the exercise of the police power, do not constitute nuisances *per se.* p. 8.
2. Same.—*Establishment by Command of Law.—Equity.—Defenses.*—That an act alleged to constitute a nuisance was required by law, constitutes a complete defense to a bill in equity to restrain the doing of such act. p. 9.
3. Counties.—*Boards.—Discretion.—Control Over.—Jails.*—In the absence of fraud, the courts have no control over the discretionary acts of boards of commissioners in the location and construction of jails. p. 9.
4. Damages.—*Location of Jail.—Discretion of Board.*—Incidental damage to adjacent property in the location of a jail by the board of commissioners gives no right of action. p. 9.
5. Nuisance.—*Operation of Lawful Business.*—The improper conduct of a lawful business may give rise to an action for damages. p. 10.
6. Insane Persons.—*Confinement in Jail.*—Under §3712 Burns 1908, §2861 R. S. 1881, insane persons may lawfully be confined in the county jails. p. 12.

7. NUISANCE.—*Jails.*—*Noises.*—*Disturbances.*—A county ·jail kept in such manner that the criminals, insane, and other persons therein confined constantly use indecent language in the hearing of the adjacent owner, create disturbances, look through the jail windows into the home and yard of such owner, continually annoying such owner, his family and guests, constitutes a nuisance. p. 12.

8. SAME.—*Right of Privacy.*—*Invasion of.*—Persons have the right of privacy in their homes, and the frequent invasion of such right by persons confined in a jail may constitute a nuisance. p. 13.

9. COUNTIES.—*Jails.*—*Nuisance.*—The authority to build a county jail does not authorize the keepers thereof to conduct it so as to constitute a nuisance. p. 13.

10. SAME.—*Jails.*—*Nuisance.*—*Damages.*—A county jail cannot be abated as a nuisance, but the improper conduct thereof may be enjoined; and its keeper may be liable in damages. p. 13.

From Sullivan Circuit Court; *Charles E. Henderson,* Judge.

Suit by Ella A. Pritchett against the Board of Commissioners of the County of Knox and others. From a decree for defendants, plaintiff appeals. *Reversed.*

*Embree & Embree, John T. Hays, Will H. Hays, James S. Pritchett* and *W. T. Douthitt,* for appellant.

*John Downey, Harry R. Lewis* and *Cullop & Shaw,* for appellees.

COMSTOCK, J.—Suit by appellant against the appellees to enjoin certain alleged improper uses of the Knox county jail, and for damages.

The complaint was in one paragraph. The issues of fact arose upon the separate answer of general denial filed by each of the defendants. A trial resulted in a finding in favor of the defendants and a decree that the plaintiff take nothing by her suit. The suit was begun in the Knox Circuit Court, from whence the venue was changed to the Sullivan Circuit Court.

Appellant assigns as error the overruling of her motion for a new trial,

Plaintiff alleges that on January 8, 1895, she became the owner in fee simple of a certain lot (describing it) in the city of Vincennes, and has ever since continued to be the owner and in possession thereof; that there is situate thereon a dwelling-house and other buildings, and at the time of the erection of the jail, later mentioned in the complaint, said property was of the value of $7,000; that, during the whole period of her said ownership she, with her husband, her son and her daughter, has kept the same as a dwelling place and home; that prior to the erection of said jail the lands so occupied by the plaintiff were advantageously situated in a peaceful neighborhood, upon one of the most desirable residence streets in said city, and the use thereof by the plaintiff, her husband and her children was in all respects pleasant and comfortable, and their said occupancy and use were never disturbed by profane and indecent language, such as is later described in the complaint; that on January 1, 1902, defendant Board of Commissioners of the County of Knox began negotiations for the purchase of the northwest half of the lot which lies immediately contiguous to plaintiff's said land, with the intent to build and maintain thereon a jail; that the plaintiff advised said defendant that the erection and maintenance of a jail at said place would be a nuisance to her and would result in her irreparable damage, but notwithstanding, to wit, on the same day, said defendant purchased said northwest half of said lot for said purpose, and caused the same to be conveyed to said Board of Commissioners of the County of Knox, and began preparations for the erection of said jail; that before said jail was erected, or any steps had been taken in the erection thereof, the plaintiff advised said defendant that its erection and maintenance would work irreparable injury and annoyance to her and her family, and requested said defendant not to erect or use said jail upon the northwest half of said lot, but, notwithstanding said request, said defendant caused to be erected upon the northwest half of said lot, within thirty feet

of the plaintiff's said dwelling-house, a large stone jail, built in such manner that upon the side of said jail building next to and overlooking plaintiff's dwelling-house, and the kitchen, dining-room, living-room and sleeping apartments of the plaintiff and her said husband and children, there are eighteen windows, which are more than three feet wide and seven feet long, and so constructed that the same may be and are constantly open, so that prisoners confined in said jail can stand thereat and look down into the plaintiff's said home and the rooms and apartments aforesaid; that said jail was completed in the year 1902, in the form and condition in which it now is, with said windows constructed as aforesaid, and with its interior occupied by iron and steel cells with iron and steel doors, which in opening and closing make loud and discordant noises; that immediately upon the completion of said building and ever since it has been used by the defendants as the common jail of said county, said defendants have daily had confined therein an average of forty prisoners, criminals and insane, and have suffered, and still continue to suffer, said prisoners to have said windows open and to stand and to sit thereat and loudly scream, sing, swear, curse and utter profane and indecent language day and night, and to pound upon the iron cells and bars of said jail, and constantly to make loud and dismal noises, and to call to said plaintiff and her said family as they pass to and fro in said home, to curse them, and to use vile and indecent language; that by reason of these things the plaintiff and her family are wholly deprived of the quiet and comfort as well as the privacy of their said home, are greatly disturbed in the enjoyment and peace thereof, and are prevented from resting and sleeping at night, and their guests and friends who call upon said plaintiff also are disturbed, insulted and rendered uncomfortable; that this state of affairs has existed since the year 1902, and still exists without promise of any abatement; that the defendants pretend that they are powerless to abate or prevent the same in whole or in part;

that plaintiff and her family have requested defendants to prevent and abate said nuisance, but they have neglected to do so, and say that they are powerless to control said prisoners; that, in common justice to plaintiff and her said family, said defendants should close the openings aforesaid overlooking her home, or should control said prisoners and prevent their sitting or standing at said windows and looking down into plaintiff's home and calling to plaintiff and her family and said guests and disturbing them in the manner aforesaid, and so conduct said jail in a quiet, decent and orderly manner, and not as a common nuisance to the public and a common nuisance to the plaintiff in respect of her said home. Defendant Abraham Westfall is the sheriff of Knox county, and as such has control and management of the prisoners, and defendant Edward Busching is jailer, and as such is in control of said jail, subject to the order and control of his codefendants. In addition to its use as a jail, said building is used, and has been used for more than three years, as a prison of said city of Vincennes, and at all hours of the day and night the police officers of said city drive to said jail in the patrol wagon of said city, delivering prisoners thereto, and in doing so, and in opening and slamming said iron and steel doors, and by loud and boisterous talking, greatly disturb and annoy the plaintiff and her guests and family, and the prisoners so delivered, usually in a drunken frenzy, swear and use loud and obscene language, whereby the plaintiff and her family are awakened and disturbed at night, and greatly annoyed both by day and night; that, unless some remedy for the wrongs and annoyances be provided by decree of the court, the same will continue indefinitely; and the defendants threaten and declare that they will continue to maintain said jail in its present condition and in the manner aforesaid. The plaintiff prays the court for a decree forever enjoining the defendants from using said property as a jail and from confining therein, in the manner aforesaid, prisoners and insane and disorderly

persons, or if the court shall not deem the plaintiff entitled to the relief aforesaid, then that she have a decree forever enjoining the defendants from suffering the prisoners confined in said jail to stand and sit at said windows and openings and to look down into the plaintiff's said home, to curse, swear, use loud, indecent and profane language in the hearing of said plaintiff and her family and guests, to slam said doors, pound upon said cells and doors, and to make loud, boisterous and indecent noises, to her disturbance and to the disturbance of her family and guests.    Judgment for $7,000 and proper relief is prayed.

Each county in the State is required by law to provide a common jail.    §5989 Burns 1908, §5748 R. S. 1881; *Huber* v. *Robinson* (1864), 23 Ind. 137.    It is not *per se* a

1.    nuisance, but is a matter of public necessity. 1 High, Injunctions (4th ed.), §789; *Burwell* v. *Board, etc.* (1885), 93 N. C. 73, 53 Am. Rep. 454; *Bacon* v. *Walker* (1886), 77 Ga. 336.    The distinction between acts done by the counties for public purposes and those done for private emolument is well defined.    *Board, etc.*, v. *Allman* (1895), 142 Ind. 573, 39 L. R. A. 58.

''A county is one of the instrumentalities of government, and exercises delegated governmental functions.    *    *    * It was organized to give effect to the great principle of local self-government which forms such an important element of English and American liberty—which is, indeed, the vitalizing and preserving element of constitutional freedom. *    *    *    The care of the county prison is committed to the county officers in order to enable the county to discharge its duties as a governmental subdivision.    A governmental power under which the care and control of prisons fall is the great one commonly called the 'police power.'    In caring for prisons a county exercises part of this great power by virtue of its delegation to it by the legislature, and it is no more liable for the wrongful or negligent acts of the officers in immediate charge of the prison than is the State for the tor-

tuous conduct of officers placed in charge of the prisons controlled by the State directly." *White* v. *Board, etc.* (1891), 129 Ind. 396. See, also, *Morris* v. *Board, etc.* (1892), 131 Ind. 285; *Board, etc.,* v. *Daily* (1892), 132 Ind. 73; *Board, etc.,* v. *Allman, supra; Hill* v. *City of Boston* (1877), 122 Mass. 344, 23 Am. Rep. 332; *City of Ft. Worth* v. *Crawford* (1885), 64 Tex. 202, 53 Am. Rep. 753.

If the act is required to be performed by the law, it is a defense to the bill in equity to enjoin the doing of it. 2 Wood, Nuisances (3d ed.), §753; *Northern Trans.*

2. *Co., etc.,* v. *City of Chicago* (1878), 99 U. S. 635, 25 L. Ed. 336; *Murtha* v. *Lovewell* (1896), 166 Mass. 391, 44 N. E. 347, 55 Am. St. 410; *Davis* v. *Mayor, etc.* (1856), 14 N. Y. 506, 67 Am. Dec. 186; *Sawyer* v. *Davis* (1884), 136 Mass. 239, 49 Am. Rep. 27.

Wherever matters relating to the construction of public buildings have been entrusted by law to the judgment and discretion of county boards, equity will not revise or

3. control the exercise of their discretion or interfere with their action in the absence of fraud while they continue to come within the scope of the powers conferred upon them by law. 2 High, Injunctions (4th ed.), §1270; *Morgan* v. *City of Binghamton* (1886), 102 N. Y. 500, 7 N. E. 424; *Brinkmeyer* v. *City of Evansville* (1867), 29 Ind. 187.

There is a discretion reposed in commissioners in fixing the location of a county jail, over which the court has no control. The special damage in such case is incident

4. to what the general interest of the community requires and becomes *damnum absque injuria.* So far as the location is concerned: "All that can reasonably be required is that the construction and management afterwards be such as to occasion as little inconvenience and discomfort to those living near as is consistent with the public purposes to be subserved." *Burwell* v. *Board, etc., supra.*

Where a building itself or a work is lawful of itself, those

in the neighborhood have only a right that it should be conducted with due care so as to give as little inconvenience as possible. The interest and convenience of the individual must give way to the general good.

A lawful business may be so conducted as to become a nuisance. Property owners living in the vicinity, wherever located, have a right to require that it be properly conducted, with ordinary care, and with proper regard for the rights of others, and that no unnecessary inconvenience or nuisance shall be caused by it.

The material allegations of the complaint as to location of the premises, the general description of the jail, the uses to which it has been put, the offensive noises and sights, are in a general way, though not in all detail, sustained by evidence; at least no element of annoyance is understated. The evidence shows further that the building was erected on the —— day of ————. It fronts on Broadway, with a side entrance for the admission of prisoners on Eighth street. The cost of the building was $47,000. It is provided with an improved system of ventilation and sewerage, and is without architectural fault. The center section of the jail is three stories high, and the jail proper is two stories high. Every cell connects with what is known as the "exercise corridor," which is nine feet wide and twenty-eight feet long. On the outside of this exercise corridor is what is known as the "utility corridor," which is three feet wide and is between the windows and the cells. There are no pipes or valves except in this corridor, and it was not intended that anybody should go through it except the sheriff or some one ordered by him, and was never intended to be used by the prisoners. The exercise and utility corridors are connected by a door. There are no cells on the third floor, and no cell in the building connects directly with the outside walls. The entire cell construction is known as five-ply iron and steel, giving it a greater ring when the metal is brought together than ordinary iron. The cell doors are operated by what is

known as the "lever device," the latest improved and of considerable weight. It takes a strong man to throw them, bringing the metal together with a strong, firm click audible over the entire building whenever a door is closed. The effect is practically the same when the door is thrown open by the lever device. Attempts to muffle such doors have been failures, the muffle lasting for a few years, but after a little use is of no value. "For a secure jail it is impossible to get along with any less levers and iron devices than there are in this jail. * * * It is the simplest lever device that can be had." The criminal ward is on the first floor, the female and juvenile ward on the second floor, and the insane ward on the third floor. Every cell is intended to be so disconnected from a window that at no time can a prisoner handle a window. The windows are filled with what is known as "hammered glass," which will admit as much light as clear glass, and prevent persons from seeing in or out. The windows are not necessary for ventilation. The building is ventilated by what is known as the "gravity system." Mrs. Pritchett's residence is opposite all of the windows and openings, the kitchen proper, the juvenile ward, and what is intended to be the insane ward. A close fence, eleven feet high, erected by appellee, prevents prisoners in the first floor from seeing into appellant's yard. Persons kept in their cells or in the exercise corridors could not see into the windows or any part of the residence of the appellant. If the windows of the juvenile ward or insane ward are up a person in the exercise corridor can see into the rooms of Mrs. Pritchett's residence, but from the criminal ward, although the windows might be up, they could not see into any window of the house, but would have a view of the entire back yard. Insane persons are confined in the jail awaiting their commitment to the hospital for the insane. This is lawful. §3712 Burns 1908, §2861 R. S. 1881. The number was not

6. large, nor was the detention unnecessarily long. They were confined away from the criminal prisoners until

arrangements could be completed for their transfer. Some of the insane caused the greatest annoyance to appellant, but the conduct of these unfortunates could not be charged to appellees. The city of Vincennes does not maintain a city prison. The police officers of the city deliver prisoners to the jailer at any hour of the day or night, in various stages of inebriety—from helplessness to frenzy. They are quarreling, swearing, and altogether disgusting and offensive. Upon approaching the jail the gong upon the patrol wagon is sounded as a signal of its approach. At night this is disturbing, but appellees are not chargeable with these facts. The clanging noises of opening and closing the doors inside the jail have already been referred to, and seem to be a necessary incident of the proper construction and management of the prison. Religious services are held at the jail every Sunday afternoon, and the singing, praying and talking incident thereto can be heard by persons in appellant's home. Much of the annoyance and noise complained of is incident to prison life. All is not suffered in common with appellant's neighbors.

Our statute provides: "Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." §291 Burns 1908, §289 R. S. 1881.

In 1 Hilliard, Torts (4th ed.), p. 584, it is said: "In general, it may be said, that any injury to lands or houses, which renders them useless or even uncomfortable for habitation, is a nuisance. Thus, in regard to offensive odors, it is said, the neighborhood has a right to pure and fresh air. And a smell need not be unwholesome, if it is offensive, and renders the enjoyment of life and property uncomfortable." From these definitions, the manner of keeping the jail in question and matters connected therewith, as alleged in the complaint and shown by the evidence, constitute a nuisance.

The facts show, too, that appellant's right of privacy has been invaded. This right is well recognized. It is derived from natural law. "This idea is embraced in the Roman conception of justice, which 'was not simply the external legality of acts, but the accord of external acts with the precepts of the law prompted by internal impulse and free volition.' MacKeldey's Roman Law (Dropsie), §123." *Pavesich* v. *New England Life Ins. Co.* (1905), 122 Ga. 190, 194, 50 S. E. 68, 69 L. R. A. 101, 106 Am. St. 104. See 3 Mich. L. Rev. No. 7, p. 559 *et seq.*

The statute making it the duty of the board of county commissioners to erect a jail does not carry with it authority so to manage and conduct it as to create a nuisance. *Morse* v. *City of Worcester* (1885), 139 Mass. 389, 2 N. E. 694; *Deaconess, etc., Hospital* v. *Bontjes* (1904), 207 Ill. 553, 69 N. E. 748, 64 L. R. A. 215; *City of New Albany* v. *Slider* (1899), 21 Ind. App. 392; *City of Valparaiso* v. *Moffitt* (1895), 12 Ind. App. 250, 54 Am. St. 522; 2 Addison, Torts (Dudley & Baylie's ed.), 1315; *Stein* v. *City of LaFayette* (1892), 6 Ind. App. 414; *Anable* v. *Board, etc.* (1894), 34 Ind. App. 72, 107 Am. St. 173.

Objection to the erection of the jail was made to the board of county commissioners by appellant, but no complaint has been made to the present board of commissioners of the manner in which it is conducted. The facts in the case of *Deaconess, etc., Hospital* v. *Bontjes, supra,* are very analogous to those before us, but in *Roberson* v. *Rochester Folding Box Co.* (1902), 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. 828, cited by appellee, they are very different.

The jail being a public necessity, and not a nuisance *per se,* its abatement is not authorized. It becomes a nuisance by the manner in which it is conducted. In that regard appellant is entitled to relief. Such relief may be given by keeping the windows closed in such prison on the side next to appellant's residence. For such annoyances

as are necessarily incident to a jail, the law awards no damages. Appellee board of county commissioners is not liable for damages. *Board, etc.,* v. *Allman, supra,* and cases cited. In *Haag* v. *Board, etc.* (1878), 60 Ind. 511, 28 Am. Rep. 654, the question of the liability of the county for the maintenance of a pesthouse seems not to have been questioned. Appellees Westfall and Busching may be liable.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Roby, J., absent.