BENNETT ET AL. v. LAKE ERIE AND WESTERN RAIL-
ROAD COMPANY ET AL.

[No. 10,237.  Filed June 16, 1920.  Rehearing denied October 7,
1920.  Transfer denied November 17, 1920.]

1. RAILROADS.—*Powers.*—*Switch Tracks and Engines.*—The gen-
eral power of railroads to erect and maintain all buildings and
station facilities necessary for efficient service to the public,
under §5195 Burns 1914, Acts 1911 p. 136, includes by implica-
tion switch tracks near the station with the switch engines
thereon ready for immediate use, necessary for such efficient
service.  p. 164.

2. NUISANCE.—*Damnum Absque Injuria.*—*Railroads.*—One who
chooses to invade for residential purposes a district devoted
wholly to railroad and manufacturing purposes, does so at his
own risk and must be held to have anticipated the incidental
damages from smoke, gases, fumes and noises, which must be
regarded as *damnum absque injuria.*  p. 166.

From Howard Circuit Court; *William C. Overton,*
Judge.

Action by Daisy Bennett and another against the Lake
Erie and Western Railroad Company and another.
From the judgment rendered, the plaintiffs appeal.  De-
fendants assign cross-error.  *Affirmed* in part and *re-
versed* in part.

*B. F. Harness* and *B. C. Moon,* for appellants.

*John L. Rupe, John B. Cockrum* and *Bell, Kirkpatrick
& Purdum,* for appellees.

NICHOLS, J.—Causes Nos. 10237 and 10361 are both
appeals from the same judgment, which was rendered
in the Howard Circuit Court, and have been heretofore
consolidated under No. 10237.  There is a motion for
a rehearing on the ruling of the court consolidating the
two causes.  The motion is overruled,  There is no
reason why both causes may not be disposed of in the
one opinion.  The question is presented as to whether
the bill of exceptions containing the evidence is a part

of the transcript in the cause No. 10361, but, as we view the case, it is not important whether it is or not.

The action was brought by appellants in cause No. 10237, hereinafter called appellants, against appellees in said cause, hereinafter designated as Lake Erie company and Pennsylvania company, to enjoin them from maintaining an alleged nuisance adjacent to the property of appellants by befouling the air with soot, smoke and dust from said railroad companies' switch engines at night, with incidental damage to such appellants' property within six years last preceding the filing of the complaint. There was a complaint in one paragraph, to which each of the railroad companies filed a separate demurrer, which was overruled. Each appellee then filed an answer in five paragraphs, and the cause was put at issue by a reply by each of the appellants, and was thereupon submitted to the court for trial.

The court made special findings of fact, the substance of which is as follows: Appellant Daisy Bennett at the beginning of this action on December 9, 1914, and continuously for six years theretofore, was the owner in fee of certain real estate described in her complaint, and in possession thereof by herself or tenants, and continuously in such ownership and possession until April 25, 1916, when she executed a contract of sale thereof to one Arnold Norris and she has ever since continued to be the owner of such real estate, subject to such contract of sale. The said Norris has since such contract of sale been in the possession of said real estate and has been paying the installments on the purchase price thereof. Appellant Nicholas Deschamps at the beginning of this action and for six years prior thereto had been the owner in fee of the real estate described in the complaint as belonging to him, and has continued to be the owner and in possession thereof, including the residence, business rooms and outbuildings thereon situated.

Each of the appellees has for many years owned, maintained and operated, and still owns, maintains and operates its railroad through the city of Kokomo, Indiana. Such systems of railroad tracks lie immediately west of the present Main street in the city of Kokomo and adjacent to the real estate owned by appellants located on the east side of Main street. A part of said tracks are owned separately by each of said companies and the connecting tracks by both of said companies. On December 9, 1914, and for more than twenty years continuously prior thereto the entire area of the city of Kokomo inclosed by Main, Broadway, Buckeye and North streets was and had been wholly occupied by the main lines, switches, storage tracks, freight yards, offices and other equipment of said railroads and various buildings used for manufacturing purposes, and that during all of said time there were and had been no residences in that area. As appears by a plat, these streets form a rectangle about twice as long north and south as east and west, Main street on the east, Broadway on the south, Buckeye on the west, and North street on the north. On December 9, 1914, and for more than twenty years continuously prior thereto, the real estate on the north side of North street between Buckeye and Main streets, the west side of Buckeye between North street and Broadway, the south side of Broadway between Buckeye and Main streets, was and had been occupied by buildings used for manufacturing and industrial purposes, and there were and had been no residences in said area. On said date and for twenty years continuously prior thereto, said area of Kokomo bounded by said Main, Broadway, Buckeye and North streets, and the realty abutting on said streets on either side thereof, were in the industrial and manufacturing district of the city of Kokomo, and were not and had not been during said time the residence district. Dur-

ing all of said time the Pennsylvania company had maintained its passenger and freight stations, freight houses, and general station equipment along its main line of the railroad at the southeastern part of said rectangle near the intersection of said Broadway and Main streets. During all of said time the Lake Erie company maintained its passenger and freight stations along its main lines between Jefferson and Jackson streets in Kokomo, several blocks south of said Broadway, and during said time it had also maintained an office for the dispatch of its business near the point of intersection of said railroads in the southeastern part of said rectangle. Said Pennsylvania company has kept from three to five switch engines for more than six years prior to the beginning of this action in said city to be used by such company in transferring freight cars and other cars at points in said city to other points therein as the business of said company and the shipping public required; and said Lake Erie company has kept one engine since July, 1910, and another since 1911 for the purposes aforesaid. Appellees, at the beginning of this action, kept and still keep from five to seven engines at night on said tracks on the west side of Main street in said city adjacent to the properties of appellants and in the immediate vicinity thereof. Three to five of said engines belong to the Pennsylvania company and two to the Lake Erie company. Such engines are placed on said sidetracks every evening at about 6 o'clock and ordinarily remain until 6:30 in the morning. Sometimes they are used for switching purposes at short periods in the night. They had been so placed and permitted to remain through the night during all of the time hereinbefore mentioned. The fire is kept throughout the night in each of said engines, thereby keeping up the steam so as to have the same ready for immediate use in case of emergency. The fires are kept up by

burning large quantities of coal. The burning of said coal and steam generated thereby causes said engines during the night to make loud and annoying noises and to give off large quantities of smoke, soot, dust and coal vapor into the air, which is carried by the wind from said engines to the residences owned by appellants and business properties owned by appellant Deschamps. Appellant Daisy Bennett resided from a date more than six years prior to the beginning of this action until about one year before the bringing thereof in the resi-dence upon her lot, and the noise made by the engines continuously throughout the night so annoyed her that it was impossible to sleep without being frequently awakened by said noise, and since moving from her said residence the noise has annoyed her tenants until she sold the property to said Arnold Norris, and such noise has so annoyed the tenants of appellant Deschamps, and the value of all of said real estate has been depreciated thereby. Appellants requested appellees to cease such annoyance, but appellees have so continued to operate and maintain said switch engines, and have declared that they will so continue to operate and maintain the same in the future unless they are compelled to cease therefrom by the decree of the court. The part of said city lying east of the properties of appellants is devoted to residences and small business properties, and, if it were not for the smoke, noise and coal vapor emitted by such switch engine, the buildings and vacant lots would have a much greater market value. There are no buildings where appellees maintain such switch engines, but they keep them on sidetracks in the open air, and appellees could at some additional expense to themselves maintain such engines at other points within and without the city of Kokomo away from residences and other buildings, where the keeping of such switch engines will not damage any person owning property adjacent

thereto, but the removal of said engines from said place to a point wholly outside of the residence district of said city would make the same less efficient for the use of appellees than said engines now are as located adjacent to the properties of appellants. The Pennsylvania company began keeping a switch engine at the city of Kokomo in 1888 and about seven or eight years thereafter began keeping a second switch engine in said city, and a third one about the year 1903. When said appellee kept one engine in said city, and when it kept two engines in said city, such engines were kept due east of the junction of said railroads. Said one engine and two engines were then kept so far away from the property of the appellants that the smoke emitted therefrom did not cause such annoyance, injury, or damage to the property of the appellants. The annoyance occasioned by said engines since the third engine has been placed in said city has been caused by keeping said engines where they are now kept. Said engines were used by appellees in moving freight cars on the various switches, sidings, connecting tracks and industrial tracks within said city. The engines of the Pennsylvania company were directed from the station of said appellee at the intersection of Broadway and Main streets, and the movements of the switch engines of Lake Erie company were directed from the station of appellee in front of its substation near the point of intersection of said railroads between the Lake Erie and Pennsylvania companies. In 1910 the Lake Erie company constructed upon its own right of way and maintained until December 9, 1914, and until the present time, a track upon which its said switch engine or engines in use in switching operations were kept, which track was on the west side of Main street north of Broadway and south of North street, and parallel and

adjacent to its main track, and no part of said track was in Main street. Between said track and the west line of Main street was a switch track of the Pennsylvania company. Said engines were steam locomotives using soft coal for fuel and were smaller in design than engines used for general freight purposes. Said engines will annoy, injure and damage appellants' property if the companies continue to maintain them where they have been so maintained. During a period of six years prior to the sale to Norris, appellant has suffered $400 damages, one-half of which was caused by each of appellees by emitting from their engines the smoke, dust, soot and foul vapors. Appellant Deschamps for a period of six years prior to the beginning of this action has suffered $400 damage, one-half of which was caused by each of appellees. Appellant Bennett's real estate has been depreciated in value by the keeping of said switch engines adjacent to her property $500, and appellant Deschamps' property has been depreciated $2,500 by the maintenance of said switch engines. During all of said time the place at which said engines have been kept and maintained is convenient for appellees, and near their office from which orders could easily be given to those in charge of said engines. To change the place of keeping said engines would cost appellees a considerable sum of money. There would be at times a short delay in passing said engines to a point where they would be used in switching. By reason of the general growth of said city and business, the area about the point of intersection of said railroads, stations and freight cars has increased in value for manufacturing and other purposes during the time appellees have so maintained and operated their railroads through said city, and such area is now valuable for such purposes. The damages to the property of appellants accrued subsequently to a date fifteen years prior to the bringing

of this action and appellees did not cause any substantial damage to appellants' property at any time prior to the fifteen years before the bringing of this action.

On these facts the court stated three conclusions of law, to wit: (1) That appellants are not entitled to recover against appellees for the permanent depreciation of the value of the real estate caused by the appellees in the maintenance of their switch engines aforesaid. (2) Appellants are each entitled to recover from appellees the amount of damage caused to appellants by the injury to the personal property or injury to the rental value of said houses. (3) Appellants are not entitled to an injunction against the maintenance by the appellees of said switch engines upon their said tracks at any point between the north side of North street in said city and a line running east and west through the north end of the ash pit of the Pennsylvania company lying immediately east of the junction of the tracks of the appellees railroad companies.

Appellants assigned as error the first and third conclusions of law, and appellees as cross-error the second conclusion.

In the complaint there is no charge of negligence in the maintenance and operation of the switching engines, nor is there any charge that their maintenance or operation at night in the manner and place where the same are maintained and operated was unnecessary or unreasonable in the discharge of the duties of appellees to the public. It appears by the special findings of fact that the tracks involved and the use of the switching engines thereon are a part of the necessary and essential operation of the appellees' railroads as public utilities in the city of Kokomo, which city is a manufacturing and industrial center of rapid growth in the past few years. Appellants' counsel in oral argument commented at length upon the growth of the city and the increase

of the railroad traffic. This growth has made necessary the construction of appellees' switch tracks and the use of the switch engines thereon in the manner as described in the special findings. It clearly appears by the findings that the vicinity involved is a railroad and manufacturing district within which territory the appellees have been operating their railroads for many years, dating back to a time when the land now occupied by appellants' residence was vacant ground. It does not appear by the plat with the record and in the briefs that there are any other dwelling houses in the immediate locality of this railroad and manufacturing district.

Appellees had the general power under the statute to erect and maintain all buildings and station facilities necessary for efficient service to the public §5195

1.  Burns 1914, Acts 1911 p. 136, and certainly the switch tracks near the station with the switch engines thereon ready for immediate use were necessary for such efficient service, and by implication were included in the grant. *Romer* v. *St. Paul City R. Co.* (1899), 75 Minn. 211, 77 N. W. 825, 74 Am. St. 455; *Black* v. *Philadelphia R. Co.* (1868), 58 Pa. 249; *Lake Shore, etc., R. Co.* v. *Baltimore, etc., R. Co.* (1894), 149 Ill. 272, 37 N. E. 91; *Wooley* v. *Grand, etc., R. Co.* (1880), 83 N. Y. 121.

Appellants rely upon the case of *Baltimore, etc., R. Co.* v. *Fifth Baptist Church* (1883), 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, but in that case a railroad company had located its engine house and machine shop immediately adjoining a church edifice, which was at the time, and for years theretofore had been, used as a place of worship. It had erected sixteen smoke stacks lower than the windows of the church. The hammering in the shop, the whistles, bells, the cinders and smoke, and offensive odors created a constant disturb-

ance of the religious service. The roundhouse could just as well have been located somewhere else. It was properly held that the church was entitled to damages. The case belongs to the class of cases including round-houses, sandhouses, coal bins, coal chutes, etc., herein-after mentioned in the quotation from *Louisville, etc., Terminal Co.* v. *Lellyett* (1904), 114 Tenn. 368, 85 S. W. 881, 1 L. R. A. 49, and is readily distinguished from the instant case.

Appellants have cited the case of *Louisville, etc., Terminal Co.* v. *Lellyett, supra*, which we have read with interest, and from which we quote as follows: "Tracks were laid in front of the property in controversy, and about 225 feet from it, as early as 1851 or 1852, and the entire traffic and travel of the Nashville, Chattanooga, & St. Louis Railway and Louisville & Nashville Railroad to and from the south passed over these tracks. With the increase of travel and traffic, the cars have been caused to pass more frequently than when the roads first commenced operations, and other tracks have been laid entering into the terminal station, and passing through it, in order to accommodate the increase. When the first tracks were laid, the property now in controversy, as well as that contiguous, was vacant. With the growth of the city this space has been occupied and residences have been erected. Thus both the travel and traffic of the roads, as well as the growth of the locality, have gone hand in hand. We are of the opinion, that, in so far as the growth and increase of travel and traffic into and through the station has brought discomfort to plaintiff, he is without remedy. In other words, the roads have the right to accommodate their increasing traffic and travel without liability, so long as their trains are operated without negligent disregard of the comfort and usable value of the plaintiff's property, and for this purpose to lay such additional tracks,

side tracks and switches into and through the station as may be required to accommodate such travel and traffic, both passenger and freight; and it is only for the additional conveniences of roundhouses, sandhouses, coal bins, coal chutes, and the switch yards and tracks necessary to operate such additional conveniences, which might be located elsewhere, though not so advantageously, perhaps, that plaintiff can complain, if they materially damage the plaintiff's property."

So in the case at bar the appellees' railroads were there first, and the district had been devoted wholly to railroad and manufacturing purposes. If appellants choose to invade it for residential purposes, they do so at their own risk, and they must take the consequences. *McMorran* v. *Fitzgerald* (1895), 106 Mich. 649, 64 N. W. 569, 58 Am. St. 511; *Gilbert* v. *Showerman* (1871), 23 Mich. 448; *Doellner* v. *Tynan* (1869), 38 How. Prac. 176; *Robenson* v. *Baugh* (1875), 31 Mich. 290. They must be held to have anticipated the incidental damages resulting from smoke, gases, fumes and noises and they must now be regarded as *damnum absque injuria*. *Lake Shore, etc., R. Co.* v. *Chicago, etc., R. Co.* (1911), 48 Ind. App. 584, 589, 92 N. E. 989, 95 N. E. 596; *Dwenger* v. *Chicago, etc., R. Co.* (1884), 98 Ind. 153; *Fink* v. *Cleveland, etc., R. Co.* (1914), 181 Ind. 539, 542, 105 N. E. 116; *Pittsburgh, etc., R. Co.* v. *Welch* (1894), 12 Ind. App. 433, 445, 40 N. E. 650; *Citizens Tel. Co.* v. *Fort Wayne, etc., R. Co.* (1913), 53 Ind. App. 230, 100 N. E. 309, Ann. Cas. 1916A 132; *Pittsburgh, etc., R. Co.* v. *Lamm* (1916), 61 Ind. App. 389, 397, 112 N. E. 45; *Roman Catholic Church, etc.,* v. *Pennsylvania R. Co.* (1913), 207 Fed. 897, 125 C. C. A. 629, L. R. A. 1915E 623; *Taylor* v. *Chicago, etc., R. Co.* (1915), 85 Wash. 592, 148 Pac. 887, L. R. A. 1915E 634; *Beseman* v. *Pennsylvania R. Co.* (1888), 50 N. J. L. 235, 13 Atl. 164; *Carroll* v.

Terre Haute, etc., Traction Co. *v.* Ellsbury—74 Ind. App. 167.

*Wisconsin, etc., Co.* (1889), 40 Minn. 168, 41 N. W. 661;
*St. Louis, etc., R. Co.* v. *Shaw* (1906), 99 Tex. 559, 92
S. W. 30, 6 L. R. A. (N. S.) 245, 122 Am. St. 663;
*Matthias* v. *Minneapolis, etc., R. Co.* (1914), 125 Minn.
224, 146 N. W. 353, 51 L. R. A. (N. S.) 1017.

Having reached this conclusion, it is unnecessary to
consider other questions presented.

The judgment is affirmed as to appellants' assign-
ment of errors and reversed as to appellee's assignment
of cross-errors, with instructions to the trial court to
restate its second conclusion of law in harmony with
this opinion, and to render judgment for appellees ac-
cordingly. The costs of this appeal are taxed to appel-
lants, and the cost of the appeal in cause No. 10361 are
taxed to the appellees, railroad companies.