HOWARD ET AL. *v.* ROBINETTE ET AL.

[No. 18,104. Filed June 8, 1951. Rehearing denied September 27, 1951. Transfer denied January 4, 1952.]

*Gates* and *Gates,* of Columbia City, and *Dan C. Flanagan,* of Ft. Wayne, for appellants.

*Bloom* and *Bloom,* of Columbia City, for appellees.

BOWEN, J.—This is an appeal from a judgment in an action brought for the abatement of an alleged nuisance and for damages. The complaint was in two paragraphs; the first, praying an injunction, and the second asking damages. The trial court found for the appellants on the first paragraph, and it is, therefore, not involved in this appeal.

Appellants' demurrer to the second paragraph of the complaint was overruled and appellants then filed a general answer and a special answer. Appellants' general answer denied the allegations of the complaint that the operation of the engine of its light and power plant constituted a nuisance and caused damage to appellees' property. The special answer alleged that the involved light plant was being operated by a municipality by virtue of legislative authority; that the diesel engine in question was necessary for the operation of said plant; that the entire operation was necessary for the public good; that there was no negligence in the installation or operation of the plant or the engine; that any noise or vibration from the operation of the engine was inherent, natural, and necessary to the operation thereof; that the electric plant was at its present location prior to the time appellees' residence was placed on its location and prior to appellees' ownership of it.

The cause was tried to a jury which returned a verdict, upon which judgment was rendered for appellees in the sum of $3,391.67.

Error assigned for reversal is that the court erred in overruling appellants' motion for a new trial.

The appellants are the Board of Trustees of the incorporated town of South Whitley, which, since 1896, has owned and operated a municipal light and water plant in such town for the purpose of supplying electric energy and water to the public of such community.

The legislative authority for the acquisition and operation of the power plant in question is contained within sections 48-301, 48-7201, and 48-7206, Burns' 1950 Replacement. Such statutes, *supra*, grants authority to such municipality to "extend, change, and improve such works and utilities when so acquired, . . ."

Originally, the power plant in question was operated as a steam plant, and electric energy developed by the use of a steam engine. In 1928, the plant was converted from a steam plant to a diesel plant, at which time two diesel engines were installed, one of which was 120-horsepower and the other 240-horsepower. In 1932, a 360-horsepower engine was added to the plant. Later, in 1940, the 450-horsepower engine was installed. The appellees purchased the real estate in question from one Orvis Hull in 1945 when the four above-described diesel engines were in operation. In 1948, and subsequent to the purchase of the real estate in question by appellees, a new and larger six-cylinder 690-horsepower engine was placed at the east end of the power plant. At the time the Robinettes, appellees herein, purchased the house in question, there was some slight noise and vibration from the operation of the diesel engines at the power plant. After the installation of the last and more powerful engine, there was more vibration and noise from the operation of such plant. Witnesses for appellees testified that there were constant rhythmic noises audible to occupants of the house while the engine was in operation, that the floors vibrated, that such vibration disturbed the rest of the members of the household, that such vibrations caused certain

cracks in the walls and pillars of the house, and caused continuous shaking of the house.

At the time the power plant was located at its present site, to the south the land was vacant extending to Eel River; to the east of the plant for a distance of 150 feet or more there were no residences, and at the time the plant was built, there was a barn, then a vacant lot, and next a building which, at one time, was used as a creamery which was added to and made into a residence along about the time the plant was built. To the west, there was a grist mill which has since been torn down, and at the present time there is a lumber yard being operated. To the west of the lumber yard is the business district; to the northwest of the plant there was an old blacksmith shop, a wagon works, and other commercial buildings. To the north from the plant, across the street, there stood two old residences at the time the plant was established, one of which residences has now been converted into a public library, and the other residence still stands. There has been built since the location of the plant two houses north across the street from the plant. Orvis Hull, who formerly owned the property now owned by appellees, and from whom they purchased it, testified that they converted the old creamery into a house which is the second house east of the appellees' property. They built a new house directly east of the appellees' property. In 1924, he moved the house the appellees purchased from another place and set the same on four limestone blocks and then added to the house. Later he built a basement. He located this house twenty feet east of the power plant, as it then existed and as it exists today, and attached to this house a garage which extends west to approximately eight feet east of the appellants' power plant. Prior to the moving or the building of the said three houses east of the power plant, there were no residences located

within a distance of more than 150 feet east of the power plant. The area to the south, southwest, west, and northwest of the power plant is either vacant ground or business and commercial properties. There are residences across the river to the south. North of the library, there is a section of residences, and since the establishment of the power plant, there has been some growth of a residential area to the north and east of the power plant.

The appellants were operating the light and power plant in question as a municipality and by virtue of authority granted to such municipality by the legislative authority of the State of Indiana. Such a municipal power plant is not a nuisance *per se. Board of Commissioners of Greene County* v. *Usrey* (1943), 221 Ind. 197, 46 N. E. 2d 823; *Town of Speedway* v. *Dugan* (1950), 228 Ind. 701, 94 N. E. 2d 542; *Pritchett* v. *Board, etc.* (1908), 42 Ind. App. 3, 85 N. E. 32.

The supplying of electricity to the individual citizens of the community has been held to be a proprietary function in cases involving the right of the public service commission to regulate such utility and concerning the liability of the same for taxation. *Dept. of Treasury* v. *City of Linton* (1944), 223 Ind. 363, 60 N. E. 2d 948; *City of Huntington* v. *Northern Ind. Power Co.* (1936), 211 Ind. 502, 5 N. E. 2d 889, 6 N. E. 2d 335.

In the construction of the power plant in question and the installation of the more powerful engine for needed extensions of the service pursuant to statutory authority and in furnishing electricity for public use, such as street lighting and public buildings, and water for fire protection and for use in public buildings, the municipality was exercising a governmental function.

The courts of this state have clearly established the rule that where a municipality or public utility company operates a utility under legislative authority, and within the right thus given, and reasonably within the exercise thereof, and where the legislature contemplates the doing of the act which causes the injury, and when the municipality uses due care and caution regarding the rights of the neighboring owners, any inconvenience or incidental damage which may arise in the absence of any negligence from the reasonable use of said property will be regarded as within the rule of *damnum absque injuria*. *Lake Shore etc. R. Co.* v. *Chicago etc., R. Co.* (1911), 48 Ind. App. 584, 92 N. E. 989; *Citizens Tel. Co.* v. *Fort Wayne R. Co.* (1913), 53 Ind. App. 230, 100 N. E. 309.

The trial court in the instant case properly adopted the rule by one instruction embodying the requirement that it was necessary for the appellees to have proved negligence on the part of the municipality in the operation of such power plant.

The courts of this state have also adopted the rule that one who chooses to invade for residential purposes a district devoted wholly to industrial purposes does so at his own risk and must be held to have anticipated the incidental damages from smoke, gases, fumes, or noises, which must be regarded as *damnum absque injuria*. *Bennett* v. *Lake Erie etc., R. Co.* (1920), 74 Ind. App. 156, 127 N. E. 777; *Lake Shore etc. R. Co.* v. *Chicago etc., R. Co., supra; Citizens Tel Co.* v. *Fort Wayne R. Co., supra.*

In the case of *Bennett* v. *Lake Erie R. Co., supra,* the court distinguished the case of *Baltimore etc. R. Co.* v. *Fifth Baptist Church* (1883), 108 U. S. 317, 2 S. Ct. 719, 27 L. Ed. 739, which case is cited by appellees together with other cases of similar import, and pointed out that in the Bennett case the appellees' railroads

were there first and that the district had been devoted to railroads and manufacturing purposes, and that if appellant chose to invade such district for residential purposes they do so at their own risk and must take the consequences.

There is no showing in the instant case that there was negligence in the construction of the power plant or in the installation of the diesel engines. Furthermore, from the record before us, it does not seem to be a reasonable conclusion that the district in question was a residential district. On the contrary, the evidence leads inescapably to the conclusion that the district was given over to industrial and commercial purposes. The power plant was in operation at the time of the erection of the residential property, and at the time appellees moved into the same there was noise and vibration from the operation of the plant. The appellees were bound to take cognizance of the legislative authority for the extension and improvement of such power plant to take care of the needs of such municipality. Appellees insist that they should be entitled to damages for the increased vibration by reason of the installation of the more powerful engine which occurred after they moved into the property in question. Such additional noise and vibration, when considered in the light of all of the evidence, could only be considered as an incidental increase made necessary under the grant of legislative authority to extend and improve such power plant under a reasonable extension of needed facilities, and the appellees must have anticipated such extension at the time they purchased and moved into the property, and they are not entitled to damages in the absence of a showing of negligence on the part of the municipality. From an examination of the record, such showing of negligence is lacking in the instant case.

We wish to call attention to the particular distinguishing circumstances of this case, where individual owners of real estate move a residence to within twenty feet of a power plant which had been long established in such location and attached a garage to such residence to within eight feet of such plant.

It is apparent that the legislature contemplated the doing of the act which was the cause of the injury in providing for a reasonable extension of the power plant facilities. While it is true, that grants of legislative authority do not confer on municipalities the power to operate the facilities of a power plant in total disregard of the private rights of others, and with complete immunity for the invasion of such rights, in this case, we do not have a situation of a municipality invading a residential district for the purpose of erection of a power plant.

Where an industrial district is invaded for residential purposes under the circumstances shown in the case at bar, the invader does so at his own risk, and must suffer the consequences of a reasonable exercise of the grant of legislative authority by the municipality.

The court, therefore, erred in overruling appellants' motion for a new trial, and the verdict was contrary to law.

Judgment reversed.

NOTE.—Reported in 99 N. E. 2d 110.