CITY OF GARY, Indiana, by
its Mayor, Scott L. KING,
Appellant–Plaintiff,

v.

SMITH & WESSON CORP., Beretta U.S.A., Corp., Colt's Mfg. Co., Inc., Browning Arms Corp., Glock Corp., Charter Arms Corp., Hi–Point Firearms Corp., Navegar Inc., d/b/a/ Intratec U.S.A., Corp., B.L. Jennings Inc., Bryco Arms Corp., Phoenix Arms Corp., Lorcin Engineering Corp., Sturm, Ruger & Co., Corp., Taurus Firearms Corp., Davis Industries, Inc.,

Ameri–Pawn of Lake Station, Inc., Blythe's Sport Shop, Inc., Cash Indiana, Inc., Jack's Loan, Inc., Jim Shema's Outdoor Sports, Westforth Sports, Inc., and Does 1–225, Appellees–Defendants.

No. 45A03–0105–CV–155.

Court of Appeals of Indiana.

Sept. 20, 2002.

W. Anthony Walker, Lukas I. Cohen, James B. Meyer, Meyer & Wyatt, P.C., Gary, IN, Attorneys for Appellant.

James P. Dorr, Sarah L. Olsen, Wildman, Harrold, Allen & Dixon, Chicago, IL, Terence M. Austgen, Elizabeth Bezak, Singleton, Crist, Austgen & Sears, Munster, IN, Attorneys for Manufacturer Appellees.

Richard A. Mayer, Spangler, Jennings & Dougherty, PC, Merrillville, IN, Attorney for Appellees Browning Arms Co., Glock, Inc., and Hi–Point Firearms.

John Renzulli, Leonard Rosenbaum, Renzulli & Rutherford, LLP, New York, NY, Attorneys for Appellees Glock, Inc. and Hi–Point Firearms.

William M. Griffin, III, Friday, Eldredge & Clark, Little Rock, AR, Attorney for Appellee Browning Arms Co.

John Walter Mead, Mead, Mead & Clark, P.C., Salem, IN, Stacia L. Yoon, Kopko, Genetos & Retson LLP, Merrillville, IN, Michael C. Hewitt, Bruinsma & Hewitt, Costa Mesa, CA, Attorneys for Appellee Bryco Arms Corp.

Thomas E. Fennell, Michael L. Rice, Jones Day Reavis and Pogue, Dallas, TX, Robert F. Parker, Burke, Costanza & Cuppy, Merrillville, IN, Attorneys for Appellee Colt's Manufacturing Company, Inc.

Renee J. Mortimer, Hinshaw Culbertson, Munster, IN, Timothy A. Baumann, Budd, Larner, Gross, Rosenberg, Greenberg & Sade, Atlanta, GA, Attorneys for Appellee Taurus International Manufacturing, Inc.

Timothy Atwood, Shelton, CT, Attorney for Appellees Charter Arms Co. and Interarms, Inc.

Michael Zomcik, Michael Branisa, Tarics & Carrington, Houston, TX, Attorneys for Appellee Phoenix Arms.

David C. Jensen, John M. McCrum, Eichhorn & Eichhorn, Hammond, IN, Lawrence S. Greenwald, Catherine A. Bledsoe, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD, Attorneys for Appellee Beretta U.S.A. Corp.

David W. Pera, Buoscio, Pera & Kramer, Merrillville, IN, Jeffrey S. Nelson, Shook, Hardy & Bacon, Kansas City, MO, Attorneys for Appellee Smith & Wesson Corp.

Kenneth D. Reed, John P. Reed, Abrahamson & Reed, Hammond, IN, Attorneys for Appellees Blythe's Sport Shop, Inc. and Jack's Loan, Inc.

John E. Hughes, Hoeppner, Wagner & Evans LLP, Merrillville, IN, Attorney for Appellee Cash Indiana, Inc.

Stephen E. Scheele, Goodman, Katz, Scheele & Bauswell, Highland, IN, Ihor A. Woloshansky, Merrillville, IN, Attorneys for Appellee Westforth Sports, Inc.

## OPINION

BROOK, Chief Judge.

### Case Summary[1]

Appellant-plaintiff City of Gary, Indiana, by its Mayor, Scott L. King ("the City"), appeals the trial court's dismissal of its suit against various handgun manufacturers, a handgun distributor, and various

---

1. We heard oral argument in this case on May 22, 2002, in Indianapolis, Indiana. We commend counsel for the high quality of their written and oral advocacy.

handgun dealers (collectively, "Appellees"). We affirm in part and reverse and remand in part.

### Issues

The City raises eight issues for our review, which we consolidate and restate as the following three:

I. whether the trial court properly dismissed the City's public nuisance claim;

II. whether the trial court properly dismissed the City's negligence claims; and

III. whether the trial court properly struck a proposed settlement agreement between the City and one of the Appellees from the City's first amended complaint.

### Facts and Procedural History

Appellees either manufacture, distribute, or sell handguns. The City originally filed suit against Appellees in Lake County Superior Court, alleging public nuisance against all Appellees; negligent distribution, marketing, and failure to warn against all Appellees; and negligent design against manufacturer Appellees. The City sought compensatory damages, injunctive relief, and punitive damages. On September 29, 1999, Appellees filed a notice of removal to federal court. On April 17, 2000, the federal court determined that there were no issues of federal law in the City's claims and remanded the case to the trial court. In May and June of 2000, Appellees filed motions to dismiss under Indiana Trial Rule 12(B)(6) for failure to state claims upon which relief could be granted. On January 12, 2001, the trial court granted Appellees' motions and dis-

missed all the City's claims in an order reading in relevant part as follows:

### JUDGMENT OF DISMISSAL

. . . .

The parties defendant have been segregated by plaintiff's Complaint into the following categories, which identification said defendants seem to have accepted:

*Manufacturers:*

Smith & Wesson Corp.

F.I.E. Corp.*

Beretta U.S.A. Corp.

Glock Corp.

Charter Arms Corp.

Savage Arms Corp.[*]

Interarms Corp.[*]

Harrington & Richardson Corp.[*]

Hi–Point Firearms Corp.

Sigarms Corp.[*]

Navegar, Inc. d/b/a Intratec USA Corp.

Bryco Arms Corp.

Kel–Tec Cnc, Corp.[*]

Phoenix Arms Corp.

Lorcin Engineering Corp.

St[ur]m, Ruger & Co. Corp.

Sundance Industries Corp.[*]

Taurus Firearms Corp.

*Dealers:*

Ameri–Pawn of Lake Station, Inc.

Blythe[']s Sport Shop, Inc.

Cash Indiana, Inc.

Fetla[']s Bargain Center, Inc.[*]

Jim Shema's Outdoor Sports

Westforth Sports, Inc.

*Distributor:*

B.L. Jennings, Inc.

*Miscellaneous John Does:*

_____

* Defendants indicated with an asterisk (" [*]") are not parties to this appeal, as they were not

named in the City's first amended complaint.

It has been conceded that, basically, Manufacturers sell handguns to Distributors, who in turn sell to Dealers, who in turn sell to the general public. Manufacturers are precluded by law from selling direct to members of the general public. This lawsuit applies only to the sale and distribution of handguns; not long guns (rifles and/or shot guns).

During the course of proceedings, the City settled with defendant, Fetla[']s Bargain Center, Inc., and they are no longer a party. In addition, the City unilaterally filed with the Court a copy of an unexecuted, but proposed written Settlement Agreement between defendant Smith & Wesson Corp. and the City. There is no evidence that such Agreement was ever entered into, and Smith & Wesson Corp. remains a party defendant in this litigation. Defendant objected and moved to strike out the filing. The City did not object or otherwise respond. During the course of the second day of arguments, City referred to the Agreement, and defendants reiterated their objection. The Court sustained defendants['] objection and granted their Motion to Strike the document from the Court's records, as irrelevant, under Rule of Evidence 401, and as a purported agreement of settlement and compromise under Rule of Evidence 408. It should be noted that efforts were made to remove this cause to the United States District Court, for the Northern District of Indiana, Hammond Division, sitting at Hammond. Many months elapsed, during which pleadings and papers were filed in the Federal Clerk's Office, before the Federal Court declined removal, and remanded the cause to state court.

The defendants' respective Motion(s) to Dismiss are predicated upon Ind. Trial Rule 12(B)(6) which provides, in substance, for a dismissal of a pending cause if the well-pleaded allegations of the pending complaint, when taken as true, fail to state a claim upon which any relief can be granted, even when all inferences and intendments are taken, and viewed, in a light most favorable to plaintiff. *Donahue v. St. Joseph County,* 720 N.E.2d 1236 (Ind.Ct.App.1999), and *City of New Haven v. Reichart,* 729 N.E.2d 600 (Ind.Ct.App.2000).

The Court Finds, Concludes, Adjudges and Decrees that each and all of the respective defendants', manufacturers['], distributor['s] and dealers['] separate and several motions to dismiss should be, and the same hereby are, **GRANTED,** and this cause should be, and the same is hereby, **DISMISSED,** as to each and all of the remaining captioned defendants, for the following separate and several reasons, and upon the following separate and several grounds, to-wit:

. . . .

The common law requirements for public nuisance claims in Indiana are very clear. First, public nuisance claims must arise from an unreasonable use of property. *Deller v. Hofferberth,* [127 Ind. 414] 26 N.E. 889 (Ind.1[89]1), or a violation of a specific statute, *Whittington v. State of Indiana,* 669 N.E.2d 1363 (Ind.1996). Second, to be liable for a public nuisance, one must be in control of the offending item or activity at the time of injury to plaintiff. See, e.g. *Brown v. Powell,* [92 Ind.App. 467] 176 N.E. 241, 243 (Ind.Ct.App.1931). Third, because public nuisance describes a form of harm rather than a free-standing tort theory of liability, plaintiffs must plead an actionable basis in tort for such a claim. Restatement (Second) of Torts § 821B, cmt. e. Fourth, a legislative body cannot authorize conduct on one hand, and seek to punish it through public nuisance actions on the other,

particularly where a comprehensive regulatory scheme already governs the challenged conduct. *Sopher v. State,* [169 Ind. 177] 81 N.E. 913 (Ind.1907). Plaintiff's Complaint does not satisfy any of these requirements. Plaintiff's Complaint fails to bring the City's public nuisance claim within the limits set by Indiana common law.

Arguing that it need not plead an underlying tort in order to claim relief for the harm produced by a public nuisance, the City departs once again from common law, which requires that a defendant's interference with a public right involve conduct which is "intentional or unintentional and otherwise actionable under the principles controlling liability for negligent or reckless conduct or for abnormally dangerous activities." Restatement § 821B, cmt. e. In other words, public nuisance claims must arise from conduct which is actionable, not merely any conduct for which liability would not otherwise lie, as plaintiff proposes.

As the City's cases demonstrate, Indiana courts require that a plaintiff plead and show underlying actionable conduct in order to support a public nuisance claim. Contrary to plaintiff's argument, conduct cannot constitute a public nuisance unless it is actionable under some theory of tort law. Restatement (Second) of Torts § 821B cmt. c. The City has not pled and cannot plead actionable negligence, intentional misconduct or conduct creating an ultrahazardous activity. The City is required to do so to survive defendants' motion to dismiss.

Indiana common law likewise prohibits the City's public nuisance claim here because defendants' commercial activities are legislatively authorized and extensively regulated. Restatement (Second) of Torts § 821B, cmt. f; *Sopher,* 81 N.E. at 915. Under an umbrella of statutes and regulations, the United States Congress, the Indiana legislature, and Gary have each authorized the lawful distribution, ownership and sale of firearms of specific styles to federally licensed commercial entities—precisely the activity the City now seeks to declare a nuisance.

The City misstates Indiana law, claiming that defendants owe a duty of care to the City, because harm to the City caused by the criminal misuse of firearms is foreseeable. Indiana law supports the imposition of a duty of care to avoid foreseeable injuries to foreseeable victims only where the defendant has a relationship with the plaintiff that gives rise to a duty to protect the plaintiff from such injuries or, in the absence of such a relationship, where the defendant has actual control over the instrumentality which caused the harm. *Ebbingham [v. FirstFleet, Inc.],* 693 N.E.2d [644] at 648 [ (Ind.App.1998) ]; *Whitten v. Kentucky Fried Chicken Corp.,* 570 N.E.2d 1353,1356 (Ind.Ct.App.1991); *Helmchen [v. White Hen Pantry, Inc.],* 685 N.E.2d [180] at 181 [ (Ind.App.1997) ].

Public policy, as articulated by the Indiana legislature, supports defendants' continued lawful, regulated manufacture and distribution of firearms to Indiana citizens. *Kellogg vs. City of Gary,* 562 N.E.2d 685, 694 (Ind.1990). Indiana statutes and regulations reflect Indiana's public policy considerations concerning firearms and the distribution thereof. Those statutes and regulations expressly allow defendants to do precisely what the City claims renders them subject to liability in negligence. See id. The City's attempt to characterize defendants as "wrongdoers", where their activities are expressly allowed by the Indiana Constitution and the Indiana

legislature, is improper. See Ind.Code § 35–47–2–1, et seq. (1999); see also *Kellogg,* 562 N.E.2d at 694.

The City attempts to aggregate all shootings, including accidental and intentional shootings, as a basis for its product liability claim. By doing so, the City seeks to hold defendants absolutely liable for injuries sustained through any use of firearms, even where the firearms are misused and/or deliberately operated to cause intentional injury. Neither Indiana nor any other court has adopted such a radical departure from product liability law. See id.

. . . .

The City's failure to warn claim is equally flawed. In an attempt to maintain its otherwise deficient claim, the City reconfigures its argument, stating that defendants have not adequately warned buyers about the non-obvious dangers posed by firearms. The City cannot evade the allegations of its own Complaint, which—because of its aggregated nature—seeks to impose liability for failing to warn of the open and obvious dangers associated with firearms, as well as of the dangers of intentional and criminal misuse. In Indiana, a duty to warn of a product's risks extends only to those who can reasonably be assumed to be ignorant of the risks that a warning would illuminate. *Senco Prod. Inc. v. Riley,* 434 N.E.2d 561, 570 (Ind.Ct.App. 1982). Moreover, the duty to warn assumes that there is a hidden defect in the product such that the danger created by the defect is not open or obvious to all. See *Bemis Co. v. Rubush,* 427 N.E.2d 1058, 1061, cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). There is no such basis for such an assumption here, in light of the City's aggregated claims which seek liability on the basis of intentional as well as accidental shootings. Accordingly, the City's failure to warn claim should be dismissed.

. . . .

For the reasons, and upon the grounds, set forth above, the Court **GRANTS** defendants' Motions to Dismiss and, pursuant to Ind. Trial Rule 54(B), the Court expressly determines that there is no just reason for delay in entry of Judgment in favor of the defendants. Accordingly, the Court expressly directs entry of Judgment in favor of each and all of the remaining defendants named in the caption, and against the plaintiff City of Gary, by its Mayor, Scott L. King.

It is so **ORDERED, ADJUDGED** and **DECREED** this *12* day of January, 2001.

On January 22, 2001, the City filed an amended complaint, naming as additional defendants manufacturer Appellees Browning Arms Corp. ("Browning"), Colt's Manufacturing Co., Inc. ("Colt's"), and Davis Industries, Inc. ("Davis Industries"). On March 13, 2001, the trial court granted Appellees' motion to dismiss the amended complaint:

### *ORDER OF MARCH 13, 2001*

On January 23, 2001, Plaintiff files its First Amended Complaint, amended by interlineation on March 12, 2001, after the original Complaint had been dismissed by this Court on January 12, 2001.

Certain Defendants filed a renewed Motion to Dismiss, along with a Motion to Strike the Smith and Wesson Settlement Agreement incorporated in the Amended Complaint. Other Defendants joined in said motion.

The Court **NOW DETERMINES** to grant Defendants' Motion to Strike the Smith and Wesson Settlement Agree-

ment included in the Amended Complaint as being immaterial to the issues being raised in the Complaint and is not admissible under Indiana Rules of Evidence No. 405.[2] The Court **FURTHER DETERMINES** that the Amended Complaint does not correct the deficiencies of the original Complaint as determined by the Court with opinion.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that the renewed Motion to Dismiss Plaintiff's First Amended Complaint by all Defendants is GRANTED and Plaintiff's First Amended Complaint is dismissed in its entirety with prejudice. It is further **ORDERED, ADJUDGED AND DECREED** that the renewed Motion to Strike the Smith and Wesson Settlement Agreement by all Defendants is **GRANTED** and the Settlement Agreement of March 17, 2000 attached as an Exhibit to City's First Amended Complaint is **ORDERED** stricken. The Court incorporates herein the reasoning set forth in its Order dated January 12, 2001.

SO ORDERED this 13th day of March, 2001.

The City now appeals.

### Discussion and Decision

The trial court granted Appellees' motion to dismiss the City's complaint pursuant to Trial Rule 12(B)(6).

A trial rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of a claim, not the facts supporting it. Therefore, we view the pleadings in the light most favorable to the nonmoving party and draw every reasonable inference therefrom in favor of that party.

When reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law.

*Borgman v. Aikens,* 681 N.E.2d 213, 216–17 (Ind.Ct.App.1997), *trans. denied* (1998) (citations omitted).

We will not affirm a dismissal under T.R. 12(B)(6) unless it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances. This court accepts as true the facts alleged in the pleading. Only when the pleading states a set of facts, which, even if true, would not support the relief requested, will we affirm the trial court's dismissal.

*Lattimore v. Amsler,* 758 N.E.2d 568, 570 (Ind.Ct.App.2001) (citations omitted).

Under Indiana's "notice" pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case. Ind.Trial Rule 8(A)[.] A pleading is sufficient when it pleads the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. Rather than exalt form over substance, this Court will uphold its long-standing policy that cases should be decided on the merits and justice should not be defeated by technicalities.

*Binninger v. Hendricks County Bd. of Zoning Comm'rs,* 668 N.E.2d 269, 272 (Ind.Ct.App.1996), *trans. denied* (1997) (some citations omitted). With these standards in mind, we turn to the City's substantive claims.

### I. Public Nuisance

In its amended complaint, the City alleged that "[Appellees'] joint and several

2. It is clear that the trial court meant to cite Evidence Rule 408, as it relied upon Evidence Rules 408 and 401 in striking the proposed settlement agreement in its order dismissing the City's first complaint.

ongoing wrongful conduct relating to their creation, promotion, support, and supply of an illegitimate secondary market for handguns has created, maintained, and contributed to a public nuisance in the City of Gary." Appellant's App. at 31. Several of the City's factual allegations involve dealer Appellees participating in "straw purchases," wherein a person purchases a handgun with the intent to transfer it to a person who the purchaser knows cannot legally purchase a handgun. *Id.* at 15–18. The City further alleged that "the residents of Gary will continue to fear for their health, safety and welfare and will be subjected to conduct that interferes with the comfortable enjoyment of their life and property." *Id.* at 31. Before we can evaluate the City's public nuisance claim, we must examine the relevant public nuisance law.

■ Indiana Code Section 34–19–1–1 provides that "[w]hatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." This statute authorizes two causes of action: private nuisance and public nuisance. "The essence of a private nuisance is the use of property to the detriment of the use and enjoyment of another's property[,]" *Wernke v. Halas,* 600 N.E.2d 117, 120 (Ind.Ct.App.1992), whereas "[a] public nuisance only requires an interference with a common right." *Sand Creek Partners, L.P. v. Finch,* 647 N.E.2d 1149, 1152 n. 4 (Ind.Ct.App.1995).[3]

■ The nuisance statute is written in broad, general terms, and "it becomes clear that an incredible breadth of conduct arguably fits under the label 'nuisance', including most crimes and torts." *Id.* at 1152. "Some limits must exist on the law of nuisance[;] to ascertain these limits we turn to our common law." *Id.* Of relevance in the instant case, one limitation is the legislative authorization of a particular activity.[4]

---

3. Although private nuisance and public nuisance are both generally described as nuisance actions, Prosser and Keeton note that "[t]he two have almost nothing to do with one another, except that each causes inconvenience to someone, and it would have been fortunate if they had been called from the beginning by different names." W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 86 (5th ed.1984) (footnotes omitted).

 A private nuisance is a civil wrong, based on a disturbance of rights in land. The remedy for it lies in the hands of the individual whose rights have been disturbed. A public or common nuisance, on the other hand, is a species of catch-all criminal offense, consisting of an interference with the rights of the community at large, which may include anything from the obstruction of a highway to a public gaming-house or indecent exposure. As in the case of other crimes, the normal remedy is in the hands of the state.

 *Id.* (Footnotes omitted.) A panel of this court has noted that "[t]he law of nuisance creates

problems of definition for courts and commentators. As stated by one expert, '[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance".'" *Sand Creek Partners,* 647 N.E.2d at 1151 (quoting KEETON, *supra,* § 86). A comprehensive exploration of the definitional problems presented by nuisance is beyond the scope of this opinion.

4. Even though the Indiana Code lists no affirmative defenses to public nuisance, we conclude that legislative authorization functions as such because it relieves a defendant of liability even if its activity is causing harm. *See, e.g., Molargik v. West Enter., Inc.,* 605 N.E.2d 1197, 1199 (Ind.Ct.App.1993) (concluding that a business's industrial nature is an affirmative defense to a nuisance claim even though not designated as such in the Indiana Code); *see also* BLACK'S LAW DICTIONARY 430 (7th ed.1999) (defining affirmative defense as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim,

■ This limitation was explained by our supreme court in the following passage from *Sopher v. State*, 169 Ind. 177, 81 N.E. 913 (1907), in which the State sued a licensed saloon owner:

A public nuisance, strictly speaking, arises out of the violation of public rights, and, as a general rule, results in no more special injury[5] to one person than to another. 1 Wood, Nuisances (3d ed.), § 1.

Such a nuisance *always arises from unlawful acts, consequently that which is lawful cannot be regarded in a legal sense as a public nuisance.* Therefore, if the legislature of the State, by a statute, authorizes an act to be done, which, in the absence of such a statute, would constitute a public nuisance, such act is thereby made lawful, and cannot be considered or regarded in a legal sense as a nuisance so far as the public is concerned, unless the legislature, in enacting the statute, has exceeded its power.

*Id.* at 183, 81 N.E. at 915 (emphasis added).

■ The *Sopher* court went on to explain that

[i]t is not within the province of the judges of this court, nor of those of the lower courts, in the discharge of their official duties, to criticize the policy of the legislative department, which the latter has adopted in dealing with the liquor traffic. In the administration of justice all courts must be controlled, so far as applicable, by the laws which the legislature has constitutionally enacted, without regard to the individual views, in respect to the wisdom or expediency of such laws, of the persons who may preside over such courts. Neither boards of commissioners nor courts can be held responsible for granting a license under the laws to sell intoxicating liquors to an applicant therefor who is shown to be legally entitled to such license. In discharging this duty such boards of commissioners and courts but carry out the mandate of the law, above which no one can rise, and not the individual views of those who preside over them. It must be evident to every unprejudiced mind that a court cannot nullify an act of the legislature on the mere assertion of persons assailing it that a license granted thereunder permits the licensee to maintain a public nuisance *per se* by merely selling intoxicating liquors, without violating any of the laws of the State in conducting the place in which such liquors are sold, for, as heretofore shown, whatever is authorized by an act of the legislature, which that body is competent, under the Constitution, to pass, is not, in the eye of the law, a nuisance.

While all citizens of this State have a perfect right to cry out, or declare upon the hustings, or before the legislature, or other assembled bodies, that the liquor traffic cannot be legalized without committing a sin, and while their arguments might be sufficiently potent to induce the legislature to prohibit abso-

---

even if all allegations in the complaint are true.").

Although Appellees did not raise legislative authorization in a responsive pleading as contemplated by Indiana Trial Rule 8(C), we nevertheless conclude that the trial court properly considered it in a motion to dismiss for failure to state a claim upon which relief can be granted. *See* 1A WILLIAM F. HARVEY, INDIANA PRACTICE. RULES OF PROCEDURE ANNOTATED § 12.11 (3d ed. 1999) ("'[A]n affirmative defense that is not listed in Rule 8(C) may be raised [by a 12(B)(6) motion.]'").

5. The special injury doctrine of public nuisance provides that "[a] private party may bring an action to redress a public nuisance by demonstrating peculiar injury apart from that suffered by the public." *Sand Creek Partners,* 647 N.E.2d at 1152.

lutely the traffic, they could be of no avail before a court which can neither make nor unmake laws.

*Id.* at 201–02, 81 N.E. at 921–22. In other words, if an activity causes harm that would otherwise constitute a public nuisance, but the activity has been authorized by the legislature, then the author of the activity cannot be held legally responsible for public nuisance.[6] As the *Sopher* court

---

**6.** The dissent cites to *Cox v. Schlachter*, 147 Ind.App. 530, 262 N.E.2d 550 (1970), for the proposition that "a lawful business may be so conducted as to become a nuisance." *Id.* at 534, 262 N.E.2d at 554. *Cox* is a private nuisance case, as are all Indiana cases holding that a statutorily authorized activity can constitute a nuisance. *See, e.g., Muehlman v. Keilman*, 257 Ind. 100, 109–10, 272 N.E.2d 591, 597 (1971); *Griffin v. Hubbell*, 212 Ind. 684, 690, 11 N.E.2d 136, 139 (1937); *Bowen et al. v. Mauzy*, 117 Ind. 258, 264, 19 N.E. 526, 528 (1889); *Owen v. Phillips*, 73 Ind. 284, 288 (1881); *Indiana Michigan Power Co. v. Runge*, 717 N.E.2d 216, 229 (Ind.Ct.App. 1999); *Yeager & Sullivan, Inc. v. O'Neill*, 163 Ind.App. 466, 474, 324 N.E.2d 846, 852 (1975); *Lake Shore & M.S. Ry. Co. v. L.S. & S.B. Ry. Co.*, 48 Ind.App. 584, 588, 92 N.E. 989, 991 (1910); *Pritchett v. Bd. of Comm'rs of Knox County*, 42 Ind.App. 3, 10, 85 N.E. 32, 34 (1908).

The dissent also quotes the public nuisance case of *City of Frankfort v. Slipher*, 88 Ind. App. 356, 372, 162 N.E. 241, 246 (1928), *trans. denied*, for the proposition that "a defense of legislative authorization should defeat a public nuisance claim only when the specific conduct complained of is expressly 'authorized' or 'plainly and necessarily' implied by statute or regulation." In *City of Frankfort*, a sewer system built by Frankfort forced raw sewage onto Slipher's property, which the statute in question did not specifically authorize. In constructing such a sewer system, Frankfort may well have been negligent. However, Frankfort did, in fact, affirmatively violate a *separate criminal statute*, thus bringing the case within the ambit of *Sopher*. *See id.* at 369, 162 N.E. at 245 ("By § 2647 Burns 1926, § 2066 R.S. 1881, it is made a *public nuisance and an indictable offense* for any person to cause of suffer any offal, filth or noisome substance to be collected or remain in any place to the damage or prejudice of others, or to the public, so as to injure the property of others or, essentially, to interfere with the comfortable enjoyment of life.") (emphasis added).

Additionally, we note that the *City of Frankfort* court's dicta concerning legislative authorization, quoted by the dissent, was drawn from *Anable v. Board, etc.*, 34 Ind.App. 72, 71 N.E. 272 (1904), which was a *private* nuisance case. The full citation from *Anable* reads as follows:

Moreover, if it be conceded that the State might direct some particular specific act to be done in a specified manner, which would necessarily, under any condition, result in the creation of what would be, without such authorization, a *private nuisance*, yet in the absence of specific legislative direction as to the manner in which the act should be done, it should not be assumed that the State, public necessity not requiring it, would so exercise the power as to injure the property of an individual.

It must be noted that the statute simply makes it the duty of the board "in all cases to take prompt action to arrest the spread of contagious diseases." The board is not required by the statute to erect and maintain a pesthouse. The discretion committed to the board is not limited to determining the location of a pesthouse, but it also involves the duty of determining whether it shall be built at all. That is, if the board erects a pesthouse, it does so under authority necessarily implied from the powers expressly conferred. And if the board pleads statutory sanction in justification of an act which the general rules of law constitute a *nuisance to private property,* it should show either that the act is expressly authorized by the statute, or that it is plainly and necessarily implied from the powers expressly conferred.

*Id.* at 77–78, 71 N.E. at 274 (emphases added).

Finally, the dissent cites to *Howard v. Robinette*, 122 Ind.App. 66, 99 N.E.2d 110 (1951) *trans. denied*, to support its argument. However, *Howard* is also a *private* nuisance case, and is therefore inapposite. *See id.* at 74, 99 N.E.2d at 113 ("[G]rants of legislative authority do not confer on municipalities the power to operate the facilities of a power plant in total disregard of the *private* rights of others[.]") (emphasis added).

stated, "if the legislature of the State, by a statute, authorizes an act to be done, ... such act is thereby made lawful, and cannot be considered or regarded in a legal sense as a nuisance so far as the public is concerned[.]" *Id.* at 183, 81 N.E. at 915.

We must accept as true the City's allegations that the illegal secondary handgun market in the City is causing increased fear among its residents and that Appellees are, at least in part, causing the increased fear through their activities. However, Appellees cannot be legally responsible for public nuisance if their activities are authorized by the legislature.[7] For the City's public nuisance claim to survive the pleading stage, the City must allege activity by Appellees that is specifically proscribed by the legislature.[8]

The manufacture, distribution, and sale of handguns are authorized by both state and federal law, although these activities are heavily regulated.[9] The City does not allege that any Appellees have violated any specific statute, ordinance, rule, or regulation with respect to the manufacture, distribution, or sale of handguns. After evaluating the City's first amended complaint in the light most favorable to the City and drawing every reasonable inference therefrom in the City's favor, we conclude that as to manufacturer

7. In its judgment, the trial court stated that "plaintiffs must plead an actionable basis in tort" to sustain a public nuisance claim." Appellant's Br. at 74. Quite simply, whether a defendant's actions are tortious is irrelevant in public nuisance; the question is whether the activity is legislatively authorized. Any activity can be done negligently, thereby subjecting the actor to liability in negligence, but the negligent activity cannot form the basis of a public nuisance unless it is also unauthorized. *See City of N. Vernon v. Voegler*, 103 Ind. 314, 327, 2 N.E. 821, 829 (1885) ("It is not a nuisance to do what the law authorizes, but it may be a tort to do the authorized act in a negligent manner.").

8. In its judgment, the trial court suggested that the City has no standing to bring a public nuisance suit against Appellees. In fact, Indiana Code Section 34–19–1–2 specifically authorizes local governmental units to bring public nuisance suits. *See* Ind.Code § 34–19–1–2(b)(2) ("A civil action to abate or enjoin a nuisance may also be brought by: (1) an attorney representing the county in which a nuisance exists; or (2) the attorney of any city or town in which a nuisance exists.").

9. Chapter 44 of United States Code, Title 18 (§§ 921–30) governs firearms, as does Title 35, Article 47 of the Indiana Code. Under federal law, it is illegal for a dealer to sell a handgun to a person the dealer knows or has reasonable cause to believe is under the age of twenty-one, 18 U.S.C. § 922(b)(2); a person who has been convicted of, or is under indictment for, a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C. § 922(d)(1); a fugitive from justice, 18 U.S.C. § 922(d)(2); an unlawful user of or a person addicted to a controlled substance, 18 U.S.C. § 922(d)(3); a person who has been adjudged a mental defective, 18 U.S.C. § 922(d)(4); an illegal alien, 18 U.S.C. § 922(d)(5); a person who has been dishonorably discharged from the armed forces, 18 U.S.C. § 922(d)(6); a person who has renounced his citizenship, 18 U.S.C. § 922(d)(7); a person subject to a restraining order concerning the harassment, stalking, or threatening of an intimate partner or child, 18 U.S.C. § 922(d)(8); or a person who has been convicted in any court of misdemeanor domestic violence. 18 U.S.C. § 922(d)(9).

> Under Indiana law, it is unlawful for a person to sell, give, or in any manner transfer the ownership or possession of a handgun to another person who the person has reasonable cause to believe:
> (1) has been:
> (A) convicted of a felony; or
> (B) adjudicated a delinquent child for an act that would be a felony if committed by an adult, if the person seeking to obtain ownership or possession of the handgun is less than twenty-three (23) years of age;
> (2) is a drug abuser;
> (3) is an alcohol abuser; or
> (4) is mentally incompetent.

Ind.Code § 35–47–2–7(b).

Appellees Smith & Wesson Corp. ("Smith & Wesson"), Beretta U.S.A., Corp., Colt's, Browning, Glock Corp., Charter Arms Corp., Hi Point Firearms Corp., Navegar Inc., d/b/a/ Intratec U.S.A., Corp., Bryco Arms Corp., Phoenix Arms Corp., Lorcin Engineering Corp., Sturm, Ruger & Co., Corp., Taurus Firearms Corp., Davis Industries, distributor Appellee B.L. Jennings Inc., and dealer Appellees Jack's Loan, Inc. ("Jack's Loan"), Jim Shema's Outdoor Sports, and Westforth Sports, Inc., the City has alleged no legislatively unauthorized activity. Thus, the trial court properly dismissed the City's public nuisance claim against those parties for failure to state a claim upon which relief can be granted. Such is not the case for the remaining dealer Appellees, however.

 Paragraph 39A of the City's first amended complaint alleged that Appellee Cash Indiana, Inc. ("Cash Indiana") sold a handgun to an undercover police officer who, known to Cash Indiana, was going to give it to a person who appeared to be unable legally to buy a handgun without first submitting to a background check. *See* Appellant's App. at 15. Paragraph 39C alleged that Cash Indiana sold a handgun to an undercover police officer who, known to Cash Indiana, was going to give it to a person who claimed to be a convicted felon. *Id.* at 16. Paragraph 39E alleged that Appellee Ameri–Pawn of Lake Station, Inc. ("Ameri–Pawn") sold a handgun to an undercover police officer who, known to Ameri–Pawn, was going to give it to a person who claimed to be a juvenile. *Id.* at 17. Paragraph 39F alleged that Appellee Blythe's Sport Shop, Inc. ("Blythe's") sold a handgun to an undercover police officer who, known to Blythe's, was going to give it to a person who claimed to be a juvenile. *Id.* Paragraph 39H alleged that Cash Indiana sold a handgun to an undercover police officer who, known to Cash Indiana, was going to give it to a person who appeared to be unable to legally purchase a handgun without first submitting to a background check. *Id.* Paragraph 39I alleged that Ameri–Pawn sold a handgun to an undercover police officer who, known to Ameri–Pawn, was going to give it to a person who appeared to be unable to legally purchase a handgun without first submitting to a background check.

 Each of these allegations describes the straw purchase of a handgun, which is a felony in Indiana. *See* Ind.Code § 35–47–2.5–14(b) ("A person who purchases a handgun with the intent to ... resell or otherwise provide the handgun to another person who the person knows or has reason to believe is ineligible for any reason to purchase or otherwise receive from a dealer a handgun ... commits a Class D felony."). A dealer who knowingly or intentionally attempts to aid, induce, or cause a straw purchase also commits an unlawful act and can be held criminally liable to the same extent as the purchaser.[10]

---

**10.** "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted." Ind. Code § 35–41–5–1(a). "It is no defense that, because of a misapprehension of the circumstances, it would have been impossible for the accused person to commit the crime attempted." Ind.Code § 35–41–5–1(b). Thus, even though it is impossible for a handgun dealer to aid, induce, or cause a straw purchase to an undercover police officer because the officer is committing no crime, it is possible for the dealer to *attempt* to aid, induce, or cause the straw purchase. *See* Ind.Code § 35–41–2–4 (aiding, inducing or causing an offense).

"A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing

■ Under the facts alleged by the City, dealer Appellees Cash America, Ameri–Pawn, and Blythe's have attempted to aid, induce, or cause the straw purchase of a handgun, which is clearly legislatively unauthorized. We therefore reverse the trial court's dismissal of the City's public nuisance claim against those parties.[11]

## II. Negligence

The City also brought suit against all Appellees for negligent marketing, distribution, sale, and failure to warn, and brought suit against manufacturer Appellees for negligent design. Specifically, the City alleged that Appellees' "conduct is negligent and [that they have] breached their duty of care to [the City] and its citizenry by creating and supplying and supporting an illegitimate secondary market for handguns ... by failing to exercise reasonable care in [the] marketing, manufactur[e,] ... distribution[,] and sale of their handguns." Appellant's App. at 32. The City also alleged that "[a]ll [Appellees] further violated their duty by negligently designing, manufacturing, distributing, and/or selling guns with inadequate, incomplete, or nonexistent warnings regarding the risks of harm of the product[.]" Id. at 34.

The City alleged that "manufacturer [Appellees] specifically violated [their duty to [the City] to act in a reasonably prudent manner in regards to the design of their handguns] by designing guns which they knew or should have known did not have adequate safety devices[.]" Id. The City further claimed that

[a]s a direct and proximate result of [Appellees'] aforesaid negligent intentional and wrongful acts and omissions, the handguns manufactured, distributed and sold by [Appellees] have damaged [the City] and harmed its citizenry, thereby causing [the City] to incur substantial expenses for police and other law enforcement services, rescue services, emergency medical services and other emergency services, pension benefits, disability benefits, workers' compensation benefits, health care, jail costs, increased security and other services in public facilities and other necessary facilities and services due to the threat of or actual use of the [Appellees'] handguns.

Id. at 35.

■ To sustain an action for negligence, the City must establish

(1) a duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with

---

so." Ind.Code § 35–41–2–2(b). A person without a qualified or unlimited handgun permit who wishes to purchase a handgun must complete an application process that includes a criminal background check. See Ind.Code § 35–47–2.5–4. A person's refusal to submit to the background check raises a reasonable inference that the check would reveal a criminal history that would render the person ineligible to purchase a handgun from a dealer. Thus, knowingly selling a handgun to a person who, known to the seller, is going to give it to a person who refuses to submit to a background check constitutes knowingly attempting to aid, induce, or cause a straw purchase.

11. Although the straw purchases alleged in the City's complaint constitute criminal activity by the dealers, the City has not alleged that any straw purchase has contributed to the public nuisance alleged by the City. The handguns purchased by the undercover police officers have never entered an illegal secondary market, nor have they been otherwise illegally used. Therefore, these handguns have not, and could not have, contributed to the public nuisance alleged by the City. Ultimately, the City must prove some causal connection between the alleged nuisance and the acts of dealer Appellees Cash America, Ameri–Pawn, and Blythe's.

the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. The first of these three elements, the existence of a duty, is a question of law for the court to determine.

*Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind.1999) (citations omitted). "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Stump v. Indiana Equip. Co.*, 601 N.E.2d 398, 402 (Ind.Ct. App.1992), *trans. denied* (1993). "The duty never changes, [although] the standard of conduct required to measure up to that duty varies depending upon the particular circumstances." *Id.* "Absent a duty, there can be no breach, and thus, no basis for recovery under a negligence theory." *Bloemker v. Detroit Diesel Corp.*, 720 N.E.2d 753, 757 (Ind.Ct.App.1999), *trans. denied* (2000).

 "[T]he relationship of the parties is a proper factor for consideration in determining whether a legal duty exists in a particular case." *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 241–42 (Ind.1997) (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991)). "This determination may also consider various other factors, among which are the reasonable foreseeability of harm and public policy concerns." *Id.* In the instant case, we consider the relationship of the parties,[12] the reasonable foreseeability of the harm, and public policy concerns. Some of the City's allegations apply only to some Appellees of which there are three distinct classes: manufacturers, a distributor, and dealers. We consider each class of Appellees separately where appropriate.

### A. Relationship Between the Parties [13]

#### 1. Dealers

The City has not alleged that any of the dealer Appellees has any established legal

---

**12.** At common law, courts traditionally made a distinction between " 'misfeasance,' active misconduct which causes injury to another, and 'nonfeasance,' the failure to take action to protect another from harm. Absent some definite relationship between the parties sufficient to justify the imposition of a duty to act, courts ... consistently refused to impose liability for nonfeasance." *Warren v. City of Indianapolis*, 176 Ind.App. 481, 486, 375 N.E.2d 1163, 1166 (1978), *trans. denied.* Examples of definite, or "special," relationships recognized by Indiana law are those between "innkeepers and patrons, landowners and invitees, supervising adults and children, teachers and students, and nursing home and nursing home patients[.]" *J.A.W. v. Roberts*, 627 N.E.2d 802, 809 (Ind.Ct.App.1994) (citations omitted). "The underlying thread binding these cases together is the level of interaction or dependency between the parties that surpasses what is common or usual [and u]nder those circumstances the relationship is characterized as 'special.' " *Id.* The City characterizes its negligence claims against Appellees as arising out of misfeasance, rather than nonfeasance, and contends that it therefore

need not establish the existence of a special relationship with Appellees. *See id.*

However, we conclude that Indiana law no longer requires us to distinguish between nonfeasance and misfeasance in the context of duty, and therefore, we agree with the City that it is not required to establish the existence of a special relationship to establish the existence of a duty of care. Our supreme court's opinion in *Webb* makes no distinction between nonfeasance and misfeasance and plainly applies to all duty determinations. *See id.* at 815 (Sullivan, J., dissenting in part) ("*Webb* draws no distinction between misfeasance and nonfeasance."). Additionally, none of *Webb* 's supreme court progeny mentions any legal distinction between nonfeasance and misfeasance. *See, e.g., Harris v. Raymond*, 715 N.E.2d 388, 393 (Ind.1999). In determining the existence of a duty in the instant case, we make no distinction between nonfeasance and misfeasance.

**13.** The dissent cites to *Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198 (Ind. Ct.App.1998), for the following test: "In determining whether a relationship exists that

relationship with the City, such as a contractual relationship, a landlord/tenant relationship, or a fiduciary relationship. In fact, only one Appellee (dealer Jack's Loan) is even located in the City. Dealer Appellees merely sell handguns, some of which eventually make their way into the City. Simply put, the relationship between the City and dealer Appellees is, at best, an attenuated one.

### 2. Distributor and Manufacturers

The relationship between the City and distributor Appellee and manufacturer Appellees is even more attenuated, especially with respect to the chain of distribution described in the City's allegations.

### B. Foreseeability

At the outset, we acknowledge the distinction between foreseeability in the duty context and foreseeability in the proximate cause context, as concisely stated by Judge Kirsch in *Goldsberry v. Grubbs*, 672 N.E.2d 475 (Ind.Ct.App.1996), *trans. denied* (1999).

> By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foresee-

ability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.

*Id.* at 479 (citations omitted). Without regard to the City's specific factual allegations, we conclude that it is indeed foreseeable that a municipality, such as the City, will incur costs because of the misuse of handguns within its municipal limits.

### C. Public Policy

In ascertaining public policy, "we first look to the Constitution, the legislature, and the judiciary for explicit declarations of public policy." *Trotter v. Nelson*, 684 N.E.2d 1150, 1152–53 (Ind.1997). Article I, Section 32 of the Indiana Constitution provides that "[t]he people shall have a right to bear arms, for the defense of themselves and the State." In its most recent pronouncement, our supreme court

---

would impose a duty, we must consider the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship." *Id.* at 1203. We conclude that Indiana law no longer requires us to consider these factors in evaluating the relationship of the parties. The *Downs* court cited to *Murphy v. Target Products*, 580 N.E.2d 687 (Ind.Ct.App.1991), which contained the following language: "A legal duty may generally arise in a relationship between two parties after considering the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship."

*Id.* at 688. The *Murphy* court cited to *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172 (Ind.Ct.App.1983). *See id.* at 1177 ("Generally, a legal duty arises from the nature of relationships between people. Also relevant in determining the existence of a duty is one's knowledge of the situation or circumstances surrounding the relationship.") (citations omitted). As with the common-law distinction between misfeasance and nonfeasance, we conclude that these factors have not survived *Webb v. Jarvis. Webb* does not mention these factors, and none of *Webb* 's supreme court progeny have done so.

recognized that the right to bear arms is a personal right enjoyed by private citizens:

Article I, § 32 of the Indiana Constitution is entitled "Bearing arms" and provides as follows:

The people shall have a right to bear arms, for the defense of themselves and the State.

Indiana Const., Art. I, § 32. Our Court of Appeals recognized this substantive right in *Schubert v. DeBard* (1980), Ind.App., 398 N.E.2d 1339, when it stated:

We think it clear that our constitution provides our citizenry the right to bear arms for their self-defense.

*Id.* at 1341 .... We agree with the Court of Appeals' analysis in *Schubert,* and now find that this right of Indiana citizens to bear arms for their own self-defense and for the defense of the state is an interest in both liberty and property which is protected by the Fourteenth Amendment to the Federal Constitution. This interest is one of liberty to the extent that it enables law-abiding citizens to be free from the threat and danger of violent crime. There is also a property interest at stake, for example, in protecting one's valuables when transporting them, as in the case of a businessman who brings a sum of cash to deposit in his bank across town.

*Kellogg v. City of Gary,* 562 N.E.2d 685, 694 (Ind.1990).[14]

■■■ The fact that the United States Congress and the Indiana General Assembly have pervasively regulated the manufacture, distribution, sale, and use of handguns suggests that those legislatures have already evaluated the public policy concerns regarding these activities. The misuse of handguns, whether criminal or merely accidental, imposes great costs on society, of which all legislators are undoubtedly aware. In an attempt to minimize the costs of handgun misuse, legislatures have passed laws designed to curtail handgun ownership by those who are more likely to misuse them, including known criminals, children, intoxicated persons, and mentally ill persons. We must presume that Congress and the General Assembly, as elected representatives of the people, have struck the appropriate balance between the societal costs of handguns and the historical right to bear arms.

It is worth noting, however, that the costs of the misuse of firearms in Indiana are substantial, perhaps nowhere more so than in the City. In 1999, homicide was the second-leading cause of death of all Hoosiers between the ages of fifteen and twenty-four.[15] Of those homicides, 84.9% were committed with firearms.[16] According to

---

**14.** Our supreme court has noted that "the Second Amendment has never been incorporated into the Fourteenth [Amendment] and made applicable to the states." *Kellogg,* 562 N.E.2d at 692; *see* U.S. CONST. amend. II (providing that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.").

**15.** *See* NATIONAL CENTER FOR INJURY PREVENTION AND CONTROL, CENTERS FOR DISEASE CONTROL AND PREVENTION, 10 LEADING CAUSES OF DEATH, INDIANA; 1999, ALL RACES, BOTH SEXES, *available at* http://webapp.cdc.gov/cgi-bin/broker.exe

(last visited July 11, 2002) (on file with the Court of Appeals of Indiana).

**16.** *See* NATIONAL CENTER FOR INJURY PREVENTION AND CONTROL, CENTERS FOR DISEASE CONTROL AND PREVENTION, 1999 INDIANA HOMICIDE AGES 15–24, ALL RACES, BOTH SEXES, *available at* http://webapp.cdc.gov/cgi-bin/broker.exe? —service=v8prod & —server =lscb5500 & —port=5092 & —session id=/BhzvuMEAs2 & —program=wisqars.details10.sas & —service= & type=H & age1=15 & age2=24 & agegp=15–24 & deaths=119 & —debug=0 (last visited July 11, 2002) (on file with the Court of Appeals of Indiana).

the City, over seventy persons were murdered with handguns in the City in 1997, and another fifty-four were murdered with handguns in 1998. Appellant's App. at 9–10. In 2001, the City had the highest per-capita murder rate in the nation, at 59.4 murders per 100,000 population.[17] In contrast, the 2001 murder rates per 100,000 population for other Indiana cities were 27.8 for Hammond, 12.5 for Indianapolis, 11.9 for South Bend, 9.9 for Fort Wayne, and 7.2 for Evansville.[18] While we recognize that public policy, as expressed in our constitution and by our legislature and judiciary, favors the availability of firearms, including handguns, we would be remiss if we failed to note some of the societal costs of firearm misuse.

### D. Balancing of the Factors

 As previously mentioned, none of the Appellees have close relationships with the City, and public policy clearly favors the availability of handguns. We conclude that these two factors substantially outweigh foreseeability, even though we recognize that it is reasonably foreseeable that the City will incur costs related to the misuse of handguns in the City.[19] We therefore conclude that none of the Appellees owes a duty of care to the City. Absent a duty, there can be no negligence. Thus, we must affirm the trial court's dismissal of the City's negligence claims against all Appellees.

### III. Proposed Settlement Agreement

The City contends that the trial court erred in granting manufacturer Appellees' motion to strike a proposed settlement agreement between the City and Smith & Wesson attached to the City's first amended complaint. See Appellant's App. at 40–60. The City claims that the proposed settlement agreement tends to show feasibility, i.e., that Appellees "could … both control the distribution and sale of their dangerous products, and incorporate feasible, life-saving design features into their handguns." Appellant's Br. at 47.

 Indiana Trial Rule 12(F) provides in relevant part that "the court may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent, or scandalous matter." Simply put, whether handgun manufacturers could in fact reform their business practices to reduce the costs of handgun misuse to society is immaterial at the pleadings stage, in which we are merely

---

17. See MORGAN QUITNO PRESS, 8TH ANNUAL SAFEST CITY AWARD, (Dec. 21, 2001), available at http://www.morganquit-no.com/cit02crime.htm (on file with the Court of Appeals of Indiana). The city with the second-highest murder rate for 2001 had a rate of 47.4 murders per 100,000 population, a rate over 20% lower than the City's. See id.

18. See id.

19. The appellate brief of dealer Appellees Blythe's and Jack's Loan contains the following statement: "Fundamentally, the City says to this Court … 'It's not enough. We asked the Legislature for more regulation and control and we can't get it, at least not fast enough. We now ask the Judicial Department to grant us, by judicial fiat, that which we have been denied by the Legislative Department.'" Appellees Blythe's and Jack's Loan's Br. at 2 (emphasis in original). To the extent that this statement implies that the City's suit is frivolous or constitutes an abuse of process, this implication is not well taken. We have affirmed the trial court's dismissal of only some claims against some Appellees; one of the surviving claims is the public nuisance claim against Blythe's. Moreover, the widespread misuse of handguns in the City is a serious and intractable public health issue that has existed for many years, and we perceive nothing frivolous in the City's attempts to address it by any legitimate means, whether by attempting to effect legislative change, enforcing existing laws more vigorously, or by invoking judicial process, however novel the legal theory.

evaluating the legal sufficiency of the City's claim. The trial court properly struck the proposed settlement agreement.[20]

In summary, we reverse the trial court's dismissal of the City's public nuisance claim as to dealer Appellees Cash America, Ameri–Pawn, and Blythe's, affirm the trial court's judgment in all other respects, and remand for further proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

MATHIAS, J., concurs.

RILEY, J., concurs in part and dissents in part, with opinion.

RILEY, JUDGE, concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. I concur with the majority's reversal of the trial court's grant of Appellee retailers' motion to dismiss City's public nuisance complaint. I would, however, reverse the trial court's grant of Appellee manufacturers' and Appellee distributors' Motions to dismiss the public nuisance complaint. I would further reverse the trial court's grant of all Appellees' motions to dismiss the negligence and product liability claims.

## I. Public Nuisance

The majority finds that Appellee manufacturers cannot be liable to City because their conduct is legislatively authorized, and therefore cannot be a public nuisance as a matter of law. I disagree.

The majority notes that, under our common law, legislative authorization of a particular activity acts as a limitation on nuisance liability. The majority then concludes that, because City has not alleged that Appellees violated any "specific statute, ordinance, rule, or regulation with respect to the manufacture, distribution, or sale of handguns," their conduct is therefore authorized by the legislature.

The majority relies on *Sopher v. State*, 169 Ind. 177, 81 N.E. 913 (Ind 1907). In that case, our supreme court stated "that which is lawful cannot be regarded in a legal sense as a public nuisance." *Id.* at 183, 81 N.E. at 915. But this should not be understood to mean that a company that conducts its lawful business negligently should be free from liability. It is true that the manufacture, distribution, and sale of handguns is regulated at both the Federal and state levels.[21] However, "a

---

**20.** The trial court relied on Indiana Evidence Rules 408 and 401 in granting Appellees' motion to strike the proposed settlement agreement. *See id.* at 70. Indiana Evidence Rule 408 provides in relevant part that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount[,]" but "does not require exclusion when the evidence is offered for another purpose[.]" However, the evidence must still be relevant, which is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would

be without the evidence." Ind. Evidence Rule 401. The City advances the proposed settlement agreement as tending to prove feasibility. Because feasibility is not a fact of consequence in either negligence or public nuisance, it is irrelevant as well as immaterial.

**21.** While the Appellees and the majority both claim that the firearm industry is "heavily regulated," some commentators have disagreed. With respect to distribution practices like those alleged in City's complaint, regulation has been described as "spotty at best." John G. Culhane and Jean M. Eggen, *Defining a Proper Role for Public Nuisance Law in Municipal Suits Against Gun Sellers: Beyond Rhetoric and Expedience.* 52 S.C. L. Rev 287, 304 (2001).

lawful business may be so conducted as to become a nuisance." *Cox v. Schlachter,* 147 Ind.App. 530, 262 N.E.2d 550, 554 (1970).

The specific conduct alleged by City in its complaint is not regulated by law. *See Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St.3d 416, 768 N.E.2d 1136, 1143 (2002). City has claimed, *inter alia,* that Appellees distribute their product in a "willful, deliberate, reckless, and negligent" fashion. (Complaint, ¶ 51.) For the purposes of a motion to dismiss, this court must accept these allegations as true. *Lattimore v. Amsler,* 758 N.E.2d 568, 570 (Ind.Ct.App.2001). The majority cannot reasonably contend that "willful, deliberate, reckless, and negligent" distribution of firearms is legislatively authorized. Whether Appellees' distribution practices are in fact negligent is a question for a trier of fact, not for a motion to dismiss. *See id.*

In my view, a defense of legislative authorization should defeat a public nuisance claim only when the specific conduct complained of is "expressly authorized" or "plainly and necessarily" implied by statute or regulation. *City of Frankfort v. Slipher,* 88 Ind.App. 356, 162 N.E. 241, 246 (1928). For example, in *Sopher, supra,* the defendant was convicted of maintaining a public nuisance—a saloon where he sold liquor. In reversing the conviction, the supreme court explained that Sopher had a license to do the very act that formed the substance of the State's nuisance complaint, *i.e.,* to operate a saloon and sell liquor. *Id.* at 922. The conduct complained of was expressly authorized by statute. *See City of Frankfort,* 162 N.E. at 246. In *Howard v. Robinette,* 122 Ind. App. 66, 99 N.E.2d 110 (1951), *trans. denied,* a landowner brought a public nuisance action against a neighboring power plant, arguing that the noise from the

plant's new, larger diesel engine created a public nuisance. This court reversed a judgment for the landowner, holding that the operation of the plant was necessary for the public good. *Id.* at 71, 99 N.E.2d 110. The grant of legislative authority reasonably to "extend and improve" the facility as demand required implied authorization to use a series of larger, louder engines to make the improvements. *Id.* at 73, 99 N.E.2d 110. Applying the *City of Frankfort* standard to the present case, the Appellees have not shown that the conduct City complains of—negligent and reckless distribution practices creating an illegal secondary market for handguns—is either expressly authorized or plainly and necessarily implied by existing law. The majority finds the issue of legislative authorization dispositive, so it does not address the additional three (3) arguments Appellee manufacturers raise in response to the public nuisance claim. The arguments are as follows:

1) Under Indiana common law, public nuisance requires either an interference with real property or violation of a statute;

2) Appellees had no control over the instrumentality of the nuisance;

3) City failed to plead facts demonstrating that Appellees unreasonably interfered with a public right.

Because I do not believe that legislative authorization requires dismissal of City's public nuisance claim, I will address each of these arguments in turn.

### 1. Indiana public nuisance law does not require interference with real property or statutory violations

Appellees contend that, under Indiana common law, a public nuisance action requires allegations of either an interference with real property or violation of a statute. Appellees state that every public nuisance decision in Indiana includes at least one of

these elements. (Brief. of Appellee manufacturers, at 21). This may be so, but we have never held that public nuisance law is limited to these types of actions. *See Cincinnati, supra,* 768 N.E.2d at 1142. Public nuisance is defined by statute in Indiana: "[w]hatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; *or* (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind.Code § 32–30–6–6 (emphasis added).

It is clear from the language of the statute that an interference with property is a sufficient, but not a necessary condition of a public nuisance claim. A public nuisance claim requires only an allegation of "an unreasonable interference with a public right." *Sand Creek Partners, L.P. v. Finch,* 647 N.E.2d 1149, 1151 (Ind.Ct. App.1995). In determining what constitutes an unreasonable interference, the *Sand Creek* court stated "We ... require one claiming damages from a public nuisance to demonstrate that the agency as operated has more than a mere tendency to, or increased likelihood of, causing an injury. The alleged nuisance must cause injury as a reasonable and natural result of its operation." *Id.* at 1152. The Restatement (Second) of Torts ("Restatement") includes as unreasonable interferences acts which significantly interfere with public health, safety, peace, comfort, or convenience; conduct that is contrary to statute, ordinance, or regulation; or conduct that is of a continuing nature or has produced a permanent or long-lasting effect upon the public right of which the actor is or should be aware. Restatement § 821B(2).

Again, this court must assume for the purpose of this appeal the truth of the facts City pleads. Whether those facts lead to the conclusion that Appellees have created and maintained an illegal secondary firearms market that causes injury as a natural result of its operation is inappropriate for decision at this early stage of the proceedings.

**2. The Appellees maintain control over the instrumentality of the nuisance**

Appellees next argue that they cannot be liable for a public nuisance because they had no control over the instrumentality of the nuisance. Because they have no physical control over the handguns at the moment they are used to commit crimes or otherwise injure the citizens of Gary, Appellees argue, they cannot be held liable for a public nuisance. It is true that City does not allege that any of the Appellees controlled the handguns at the moment that harm occurred; however, this argument misses the point of City's allegations. City has claimed that Appellees wrongfully created, promoted, supported, and supplied an illegitimate secondary market for handguns in Gary. (Complaint, ¶ 69). Thus, City has alleged that Appellees control the creation, promotion, support, and supply of this market. *See Cincinnati, supra,* 768 N.E.2d at 1143; *City of Boston v. Smith & Wesson Corp.,* 12 Mass. L.Rptr. 225, 2000 WL 1473568 at \*14 (Mass. Superior Ct.2000) ("[t]he 'instrumentality' which Plaintiffs allege Defendants controlled is the creation and supply of this secondary market.").

**3. City pled facts alleging that Appellees unreasonably interfered with a public right**

Finally, Appellees argue that a public nuisance claim requires allegations of unreasonable interference with a public right. They contend that City has failed to plead facts demonstrating that their interference with a public right was unreasonable. Quoting the Restatement, Appellees argue that unreasonable interference is "intentional or [is] unintentional and otherwise

actionable under the principles controlling liability for negligent or reckless conduct or for abnormally dangerous activities." § 821A, cmt. e. Restatement § 825 defines "intentional" interference:

> An ... interference with the public right, is intentional if the actor
>
> (a) acts for the purpose of causing it, or
>
> (b) knows that it is resulting or is substantially certain to result from his conduct.

*Id.* § 825.

While our public nuisance statute does not require a plaintiff to plead intentional or negligent interference with a public right, City has nevertheless alleged facts sufficient to overcome even this heightened standard. For example, City has alleged that Appellees create, support, promote, and supply an illegitimate secondary market for handguns. Complaint, ¶ 69. Furthermore, it has alleged that Appellees knew or should have known that the creation and supply of this market would interfere with the public right of the citizens of Gary to be free from handgun violence. *Id.* ¶¶ 36, 38, 41–43.

## II. Negligent Distribution and Marketing

The majority also affirms the trial court's dismissal of City's claims against all Appellees for negligent distribution and marketing. Applying a three-factor analysis, the majority concludes the Appellees owed no duty to City as a matter of law. I disagree.

The majority finds the relationship between Appellee retailers and City "attenuated" because these retailers "merely sell handguns, some of which eventually make their way into the City." It finds the relationship between Appellee manufacturers and distributor and City "even more attenuated" because of the chain of distribution alleged by the City. For the majority, the

"attenuated" relationship between the parties renders the connection between the harm alleged by City and the conduct of Appellees *tenuous and remote.* In other words, the majority seems to be saying, City is not a foreseeable plaintiff with respect to the Appellees.

"In determining whether a relationship exists that would impose a duty, we must consider the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship." *Downs v. Panhandle Eastern Pipeline Co.,* 694 N.E.2d 1198, 1203 (Ind.Ct.App.1998) *trans. denied.* In making these considerations, I examine the City's complaint, which alleges that Appellees have affirmatively acted to harm City. I find the reasoning of the court in *City of Boston* persuasive on this issue:

> Taking plaintiffs allegations as true, Defendants have engaged in affirmative acts (i.e., creating an illegal, secondary firearms market) by failing to exercise adequate control over the distribution of their firearms. Thus, it is affirmative conduct that is alleged—the creation of the illegal, secondary firearms market. The method by which Defendants created this market, it is alleged, is by designing or selling firearms without regard to the likelihood the firearms would be placed in the hands of juveniles, felons or others not permitted to use firearms in Boston. Further, according to the complaint, Defendants did this knowing that the firearms would end up in that market, and, depending upon precisely that result, realizing that Plaintiffs would be harmed. Taken as true, these facts suffice to allege that Defendants conduct unreasonably exposed plaintiffs to a risk of harm. Worded differently, the Plaintiffs were, from Defendants perspective, foreseeable plaintiffs.

*Id.* at \*15. *See also White v. Smith & Wesson,* 97 F.Supp.2d 816, 828–29 (N.D.Ohio 2000) ("[i]t cannot be said, as a matter of law, that Defendants are free from negligence because they do not owe Plaintiffs a duty of care ... In this matter, the question is whether a reasonably prudent gun manufacturer should have anticipated an injury to the Plaintiffs as a probable result of manufacturing, marketing, and distributing a product with an alleged negligent design"); *Cincinnati, supra,* 768 N.E.2d at 1144–45.

The majority's analysis, by focusing on the Appellees' lack of physical proximity to City and the multiple steps in the manufacturers' chain of distribution, fails to recognize the essential point: the Appellees' conduct, taken as true, leads naturally and foreseeably to the injuries alleged by City.

I also disagree with the majority's analysis of the public policy issues at stake in this case. That the citizens of Indiana have a right under our Constitution to own handguns is irrelevant to the City's claims: the City's complaint as pleaded does not seek to infringe upon this right; rather, it seeks a civil remedy for specific alleged damages caused by specific defendants. According to the majority, "We must presume that Congress and the General Assembly, as elected representatives of the people, have struck the appropriate balance between the societal costs of handguns and the historical right to bear arms." However, in enforcing the state's negligence and public nuisance laws, "Courts are not 'legislating' or 'making or revising rules and regulations.'" *White,* 97 F.Supp.2d at 821. Rather, they are enforcing the power of the state "to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Id.* (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 475, 116 S.Ct. 2240, 2245, 135 L.Ed.2d 700 (1996)). Last year, the city of

Gary had the highest per capita murder rate in the *nation.* A city's foremost concern is the health and welfare of its citizens. Appellees make and sell a product that is demonstrably devastating to that health and welfare. To claim that public policy weighs against imposing a duty on these Appellees to act with care toward the City is, in my view, unreasonable.

### III. *Product Liability*

The City's complaint also included product liability claims against Appellee manufacturers for negligent design, and against all Appellees for failure to warn. The trial court dismissed these claims, holding that City sought to aggregate all shootings in Gary, including accidental or criminal ones, as the basis for its product liability claims. According to the trial court, the products liability claims seek to hold Appellees absolutely liable for injuries sustained through any use of firearms in the City.

Contrary to the trial court's opinion, City's failure to identify specific injuries caused by specific handguns is not fatal to its products liability claims. Indiana is a notice pleading state. A plaintiff need only plead the operative facts involved in the litigation; the complaint's allegations must simply be sufficient to put a reasonable person on notice as to why the plaintiff sues. *City of Anderson v. Weatherford,* 714 N.E.2d 181, 185 (Ind.Ct.App. 1999), *trans. denied. See also Cincinnati,* 768 N.E.2d at 1145–46 ("Appellant was not required to allege with specificity that particular guns were defective and as a result caused particular injuries.").

City has alleged that Appellee manufacturers designed guns with inadequate safety features, making them unreasonably dangerous. (Complaint, ¶ 81). Whether the failure to install a safety device renders a product unreasonably dangerous is a question of fact. *FMC Corp. v. Brown,* 526 N.E.2d 719, 726 (Ind.Ct.App.1988),

*aff'd.*, 551 N.E.2d 444 (Ind.1990). City has also alleged that all Appellees failed to warn consumers of certain dangers associated with handguns. (Complaint, ¶ 82). Some of these allegations involve dangers that are not open and obvious, such as the risk that a handgun could be fired even with the ammunition magazine removed. A manufacturer or retailer may be liable for selling a product without warning of a latent danger in its design or use. *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437, 440 (Ind.1990).

The City's allegations, taken as true, are sufficient to overcome the Appellees' motion to dismiss. I would reverse the dismissal of City's product liability claims.